## No. 16,562.

ORIENTAL REFINING COMPANY *v.* HALLENBECK.
(240 P. [2d] 913)

Decided January 21, 1952.   Rehearing denied February 11, 1952.

Mr. Max P. Zall, for plaintiff in error.

Mr. Bernard F. Maloy, Mr. James J. Carter, Patricia H. Maloy, for defendant in error.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

The parties to this cause will herein be designated as they appeared in the trial court, where defendant in error was plaintiff and plaintiff in error was defendant.

The action is one for recovery of rental, allegedly past due, pursuant to the provisions of a written lease of property owned by plaintiff and located in the City and County of Denver. The lease is on a printed form commonly used, bears date the 6th day of November, 1947, and was to run for a period of three years from and including the 1st day of December, 1947, at an agreed rental of $12,600, payable in installments of $350 per month. It includes the usual provisions concerning the keeping in repair of improvements upon the property and the maintenance of buildings and structures, with covenants against the commission of waste and similar provisions. Specifically, with respect to the payment of rental, by the terms of the lease it was mutually agreed that if the premises be left vacant and the rent unpaid, the lessor might "without terminating this lease, retake possession of said premises and rent the same * * * and said lessee shall be liable for the balance of the rent herein reserved until the expiration of the term of this lease." It was further agreed that if the rent or any part thereof shall be in arrears, or if the lessee should default in any of the covenants or agreements therein contained to be kept and performed by it, the lessor might declare the term of the lease ended and repossess

said premises. Near the end of the printed form in a blank space was inserted in typewriting the following: "This lease is subject to the terms of a rider attached hereto and made a part hereof. The Lessee also agrees to give Six (6) months' possession in case the Lessor should at any time during the term of this lease sell the property."

Under the first paragraph of the rider, above referred to, lessee was granted an option to renew the lease upon the same terms for an additional three-year period, and, likewise, an option to purchase the property at any time during the original term or any extension thereof. The second and remaining paragraph of the rider is particularly pertinent here as it contains the substance of the basis of this entire controversy. It reads as follows: "The lessee has paid the lessor Seven Hundred Dollars ($700.00) covering the first month's rental under the terms of said lease and Three Hundred and Fifty Dollars ($350.00) as a guaranty for the faithful performance of said lease by the lessee and upon the failure of the lessee to faithfully perform the lessor shall be entitled to forfeit of said Three Hundred and Fifty Dollars ($350.00) and retain the same as liquidated damages. If the lessee has faithfully performed said terms of said lease the Three Hundred and Fifty ($350.00) Dollars to be applied on the last month's rent under the terms of the lease or any extension thereof under the option granted herein."

Pertinent undisputed facts are that defendant, as lessee, took possession of the major portion of said premises under its lease at or about the time of its effective date, and retained such possession until January, 1949, at which time it notified plaintiff that it was vacating the premises and tendered rental for the month of January as final payment. Plaintiff declined to accept the return of the premises or to acknowledge that the lease was terminated and demanded payment of rental, which

defendant refused.

Throughout the several months of defendant's occupancy of the premises, plaintiff had continued to keep certain of his property there also, and for this purpose had the use of a portion of the land and structures covered by the lease. Conflict occurs in the evidence as to this continued use of a portion of the premises by plaintiff, it being asserted on his behalf that such use on his part was by the approval and with full consent of defendant, amounting to agreement; whereas defendant insists that it did not so agree and that plaintiff simply failed to move out and vacate to it the whole of the premises leased. This continued use of a portion of said leased premises by plaintiff is the basis of a counterclaim on behalf of defendant.

On behalf of plaintiff it is contended that the lease was for a specific period of three years, unless the property during that time be sold by the lessor. Counsel for defendant, on the other hand, contends that, in view of the reservation on the part of the lessor of the right to sell and deliver possession of said premises during the term of three years, it was agreed that the lessee might at any time during said period vacate and surrender possession of the leased premises upon payment of $350 which should be retained by the lessor as liquidated damages in full, and that such was the purpose and intention sought to be expressed in the second paragraph of the rider attached to the lease and hereinbefore quoted. The particular portion of that paragraph with which we are especially concerned is that part which declares that, "upon the failure of the lessee to faithfully perform the lessor should be entitled to forfeit of said Three Hundred and Fifty Dollars ($350.00) and retain the same as liquidated damages."

With respect to the foregoing matter counsel for defendant insists that the lease, and particularly the portion of the rider hereinabove quoted, is so uncertain, ineptly expressed and ambiguous as to require explana-

tion and support by parol evidence. With this purpose in view, defendant offered the testimony of several witnesses, concerning conversations between the respective parties and their authorized representatives at and about the time of the preparation of the lease and immediately. preceding its execution. To such offers counsel for plaintiff interposed timely objection upon proper grounds. The case being tried to the court without a jury, the trial judge admitted the testimony with the observation at the time that if not material, or if otherwise improper, he would disregard all of it on final determination of the issues.

At the conclusion of the hearing and upon consideration of the evidence and arguments of counsel, the trial court found defendant to be indebted to plaintiff upon plaintiff's complaint in the sum of $2450; that plaintiff was indebted to the defendant upon the defendant's cross complaint in the sum of $1137.50; and directed the entry of judgment accordingly.

By the specification of points, counsel for defendant contends that the trial court was in error in failing to hold, under the evidence, that the lease and attached rider provided for full discharge of the lessee upon the payment of $350 as liquidated damages; that the trial court has substituted a new contract for the written lease; that the evidence showed a surrender of the premises by defendant and acceptance by plaintiff; and that no delivery of possession under the lease was ever shown to have been made by plaintiff to defendant. With respect to the matters of original deliverance under the lease and surrender of possession in January, 1949, the evidence amply sustains the findings of the court, and we give these matters no further consideration. In so far as the proper construction of the lease is concerned, the case presents somewhat more difficulty.

■■ Counsel for defendant contends that the lease, including the attached rider, is so uncertain and ambiguous as to require extrinsic evidence in order that

the court be enabled to determine the true intention and purpose of the parties. It is an elementary rule of law, requiring no citation of authority, that, aside from specific exceptions with none of which we are here concerned, parol evidence will not be permitted to modify, add to, contradict or change the provisions of a written instrument unless such contract be ambiguous within itself. A cardinal rule of construction in this connection is that, each and every part and portion of a contract is to be given effect, if possible, and that where all provisions, stipulations and conditions thereof may be given effect without one contradicting the other, then the contract cannot be said to be uncertain or ambiguous. In the instant case it is said that the provision in the rider for the payment of $350 must be held to the construction that same is to be accepted as liquidated damages in full, even where the lessee voluntarily abandoned the lease and surrendered the premises. It is true that such would be "failure of the lessee to faithfully perform," but it is not the only instance where this situation might arise, or where the lessee might fail to perform. There are many terms, covenants and conditions contained within the lease, failure in the performance of any of which might be construed as coming under this provision of the rider. In addition, the lease contains specific provisions concerning the failure to pay rent and provides the right of repossession by lessor; in which event "said lessee shall be liable for the balance of the rent herein reserved *until the expiration of the term of the lease*." (Emphasis supplied.) All of these provisions might well be construed and considered together without in any way or manner indicating positive conflict or contradiction. Applying the foregoing rule of construction, the lease is entirely consistent within itself, and cannot be said to bear on its face that degree of ambiguity which permits the introduction of extrinsic evidence.

█ At the time the testimony of witnesses was of-

fered in explanation of the meaning of the rider to the lease, the trial court, as stated above, reserved ruling upon the objection thereto. The record is silent as to whether or not it eventually considered that evidence. It may well be that in arriving at its findings and conclusions the court excluded all of such evidence, and rendered judgment accordingly. Certainly the objection should have been sustained, and it is unfortunate that the record does not disclose the final disposition made of it.

It is assumed in argument that the trial court did consider the evidence offered in explanation of the meaning of the rider, and it is contended on defendant's behalf that having so considered that evidence, it was bound thereby and should have found in defendant's favor for the reason that there was no substantial contradiction thereof. Plaintiff, when interrogated with respect to the conversation concerning which defendant's witnesses had testified, simply stated: "No conversation that I recall." It is contended that such does not constitute evidence of complete denial, but is a purely evasive answer. In the printed record such a contention seems plausible, but as a matter of fact the meaning intended to be thereby conveyed depends largely upon the inflection and emphasis with which the answer was given. The trial court saw and heard the witness and is in a much better position to judge and determine his meaning than is possible for us to understand from the printed word. There is no more salutary nor better-established rule of procedure than that which prohibits this court from setting itself up as a trier of facts, a judge of credibility, a weigher of evidence, or fixing the proper inferences and conclusions to be drawn therefrom.

In *House v. Smith, Administrator,* 117 Colo. 305, 187 P. (2d) 587, a case in which a considerable portion of testimony was uncontradicted, the following statement appears on page 310: "Nor does it follow that because a

witness is not directly contradicted by another witness that the testimony is undisputed." At page 312 is quoted with approval from *Freeman v. Boyer Bros.,* 82 Colo. 509, 261 Pac. 864, another rule, applicable here, to the effect that the appellate court considers "the evidence in the light most favorable to the successful party at the trial below and therefrom draws all inferences fairly deducible."

In *Swanson v. Martin,* 120 Colo. 361, 364, 209 P. (2d) 917, we said: "It is of course fundamental that it is the sole province of the jury to determine the issues of fact where there exists a conflict with regard thereto. It is also true that a court is not bound to accept a statement as true because there is no direct testimony contradicting it."

Numerous additional citations from this and other courts might be here noted to the same effect, and to the point that it is the peculiar province of the trial court to determine all issues of credibility and the weight to be given to the testimony of the various witnesses. This rule is very nicely expressed in the rather recent case of *Gonzales v. Chinn,* 121 Colo. 126, 129, 214 P. (2d) 371, as follows: "The credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, the inferences and conclusions to be drawn therefrom, of necessity are all within the province of the trial court, and will not be disturbed on review, unless manifestly erroneous or actuated by passion or prejudice."

Even though the trial court may have given consideration to the testimony to which it should have sustained plaintiff's objection, a search of this record discloses no manifest error in its findings, conclusions or judgment of which defendant may successfully complain.

Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE JACKSON and MR. JUSTICE MOORE dissent.

MR. JUSTICE ALTER and MR. JUSTICE KNAUSS do not participate.