## No. 18,279.

BEN HUTCHINSON, ET AL. *v.* GUY ELDER, ET AL.
(344 P. [2d] 1090)

Decided October 5, 1959.   Rehearing denied November 9, 1959.

Messrs. DICKERSON, MORRISSEY & DWYER, Mr. JOSEPH N. LILLY, for plaintiffs in error.

Mr. SAMUEL S. GINSBERG, for defendant in error Elder Construction Company.

Mr. ROBERT L. McDOUGAL, for defendants in error Guy Elder and Foster R. Orr, as Elder and Orr Construction Company.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties are here in the same order they appeared in the trial court. We will refer to the plaintiffs as Hutchinson and to the defendants as the Contractors.

Hutchinson was the owner of a number of building sites, and the Contractors were in the business of building homes. This litigation involves the construction and interpretation of a series of contracts entered into between Hutchinson and the Contractors for the development of the building sites by the erection thereon of modest homes to be sold when completed.

Upon the issues framed by the pleadings the court ap-

pointed a master, and in the order of appointment speci-
fied that the master should have power to "determine all
issues of fact and questions of law now pending and un-
decided in this case." The items in dispute were enu-
merated and the totals were stipulated by the parties,
whereupon an extensive hearing was held before the
master in which evidence was taken consisting of 338
pages.

The findings and conclusions of the master were set
aside by the court in toto. The court then entered what
was virtually a summary judgment, having before it
only the pleadings, the contracts and stipulated amounts
of the items in dispute. The court reached this result by
ruling as a matter of law that the contracts were plain
and unambiguous on their face and that testimony ex-
plaining the same was inadmissible before the master.
Hutchinson cites as error the order of the court setting
aside and holding for naught the master's findings and
conclusions and in entering its own judgment without
regard to the proceedings before the master.

One particular paragraph of the five separate contracts
entered into by the parties gave rise to the disputes. It
was alleged by Hutchinson before the master that it was
ambiguous and required interpretation. The attempt to
define the intention of the parties in the framing of this
paragraph produced much of the testimony at the trial
before the master. With the disputed words given em-
phasis, it reads as follows:

"The *ultimate cost* of the houses shall include the
actual cost of construction plus Contractor's fixed fee
of Four Hundred Thirty-five Dollars ($435.00), plus
Owner's price of Nine Hundred Fifty Dollars ($950.00)
for the land upon which each house is to be constructed.
Fifty percent (50%) of *any amount obtained* from the
sale of any house exceeding the aforementioned ultimate
cost, shall be paid Contractor as additional compensa-
tion for construction of said houses."

The master found that the "ultimate cost" included

(a) all costs of construction, (b) $435.00 contractor's fees, (c) $950.00 for each parcel of land. He found it did not include Hutchinson's costs in obtaining construction loans. He held that those enumerated items were plain and unequivocal and unambiguous. From the evidence adduced at the hearing, however, he found that "the amount obtained" from the sale of the houses was, in fact, the net amount after deducting real estate commission, F.H.A. closing fees, abstracting charges to date of sale, revenue stamps, advertising of the houses. He also found that other items such as utilities for lighting and heating of the houses during showing and to protect them in inclement weather plus expenses of landscaping to enable them to get a higher loan commitment from F.H.A. were orally agreed to be paid when the houses were ready for marketing. These matters, including the use of licensed brokers to market the houses, arose months after the original contracts and required oral testimony.

Questions to be Determined:

*Did the court err in ruling all evidence before the master inadmissible; in rejecting the master's report, and in entering judgment on the contracts as written?*

This question is answered in the affirmative.

Rule 53 (e) (2), R.C.P. Colo., provides:

"In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. * * * "

■ That the rule binds the district court to accept the findings of a master just as effectively as rule 52 (a) binds this court to accept findings of a trial court is not a new principle and has long been recognized. The binding effect of the rule is not only to be found in its language but also in the long line of cases in the federal courts wherein the rule has been many times interpreted. (See *Michael Del Balso v. Carozza*, 136 F. (2) 280, wherein *Davis v. Schwartz*, 155 U.S. 631, 15 Sup.

.Ct. 237, 39 L. Ed. 289, and numerous circuit court decisions are enumerated.)

Since the parties did not use such words as "sales price," "gross sales price" or "net sales price," the meaning of the use of the words "any amount obtained" required clarification. The only moneys actually coming into the hands of the parties, and therefore the only "moneys obtained," were the net amounts after the commissions, F.H.A. costs, abstracting fees, and other adjusted items usually found and balanced on the closing sheet. The testimony of the parties that they discussed among themselves the necessity of using real estate agents to market the houses and that advertising and other expenses were necessary before the houses could be effectively turned into cash was proper, and the finding of the master is supported by the testimony.

It is a rule of thumb to be found in the authorities that courts should give effect to the general purposes of a contract. Courts make due allowance for a common human failing, that of being careless in choosing words. We should not allow inept expressions to defeat the evident intentions of the parties. *Stewart v. Public Industrial Bank*, 85 Colo. 546, 277 Pac. 782. An interpretation which makes the contract or agreement fair and reasonable will be preferred to one which leads to a harsh or unreasonable result. 3 Williston on Contracts, Rev. Ed. 1786-7. Evidence before the master supports the conclusion that it was the intention of the parties to enter into a joint venture whereby each would obtain one half of the profits on the houses after payment of expenses which both parties knew were usual and incidental to the construction and marketing of the same. It was a fair and reasonable interpretation by the master that usually the owner of the property is the one to obtain a construction loan, thereby enabling him to pay his contractor as the work progresses, and that, therefore, the cost of the loan is chargeable to the one who obtains it. The language of the contract plainly

excludes this item as a part of "ultimate cost of construction." An equally fair and reasonable interpretation of "the amount obtained" is the money paid over to the parties after the usual expenses of sale and closing. This was all that was left to be divided equally. The findings of the master gave each party a reasonable net return in accordance with their obvious intent. In setting aside the master's report the court gave the Contractors almost $38,000.00 profit while imposing nearly $18,000.00 loss on Hutchinson. This would be harsh when it is shown that the sale of the houses did, in fact, show a net profit.

The judgment is reversed and the cause remanded with instructions to enter judgment for plaintiffs and defendants in accordance with the master's findings, conclusions, and suggested judgment.

Mr. Justice Moore dissents.

Mr. Justice Moore dissenting.

I am firmly of the conviction that the trial court was correct in holding that there was no ambiguity in the terms of the contract entered into between the parties.

The authorities cited in the majority opinion supporting the proposition that the trial court is bound by findings of a master appointed by it have no application to those findings, which amount to nothing more than conclusions of law. In the instant case the conclusion of the master that the contract was ambiguous and for that reason parol evidence was admissible, was a conclusion of law without binding force of any kind.

Where the words used in a contract are not ambiguous the intention of the parties thereto must be determined from the instrument itself, and extrinsic evidence to alter, vary, explain or change the written document is not permissible. *Stroup v. Pearce,* 87 Colo. 436, 288 Pac. 627. It is the duty of courts to interpret contracts as

made by the parties, and not to make new ones for them. *Yamin v. Levine,* 120 Colo. 35, 206 P. (2d) 596.

Where all the provisions, stipulations and conditions may be given effect without one contradicting the other, and where the words used have purpose if given their usual and generally accepted meaning, a contract is not uncertain or ambiguous, and parol evidence is not admissible. *Oriental Refining Co. v. Hallenbeck,* 125 Colo. 77, 240 P. (2d) 913.

"The mere fact that there is a difference between parties over the interpretation of an instrument does not of itself create an ambiguity." *Brunton v. International Co.,* 114 Colo. 298, 164 P. (2d) 472.

In the light of these well established fundamentals I now direct attention to the language used in the contract in question which, it is said, is ambiguous. The contract contains the following:

"The ultimate cost of the houses shall include the actual cost of construction plus Contractor's fixed fee of Four Hundred Thirty-five Dollars ($435.00), plus Owner's price of Nine Hundred Fifty Dollars ($950.00) for the land upon which each house is to be constructed. Fifty percent (50%) of any amount obtained from the sale of any house exceeding the aforementioned ultimate cost, shall be paid Contractor as additional compensation for construction of said houses."

I particularly call attention to the fact that the parties specifically provided that 50% *"of any amount obtained from the sale of any house"* (emphasis supplied) over and above certain specifically named deductions constituting the ultimate cost of the houses, was to be paid to the contractor. The contract did *not* provide that the *"net"* amount obtained from the sale of any house after closing costs, or incidental expenses, were first deducted, should be the sum from which the contractor was to be paid 50%. If the parties had intended to so provide it would have been a very simple thing to have included words which qualified the generally accepted meaning

of the phrase "amount obtained from the sale of any house." The majority opinion writes into the contract the word "net" which is not present in the instrument signed, and thus makes a new contract for the parties, notwithstanding the fact that the authorized items to be deducted as costs were set forth with careful particularity. I am quite sure that the "amount obtained from the sale of any house," is the amount which the purchaser pays for that house. What the vendors of the property may do with the sum "obtained from the sale" in paying this or that obligation, which may have been theretofore or thereafter incurred, has nothing whatever to do with the amount *obtained from the sale*. If the parties intended *"net* amount *obtained* from the sale" they should have placed that limitation in the contract. The fact that the word "net" is omitted certainly doesn't create an ambiguity. (Emphasis supplied.)

Moreover, in another section of the contract the parties clearly indicated that the "amount obtained from the sale" of a house, as used in the quoted portion of the contract, meant the *purchase price paid by the buyer*. This clearly appears from the contract where it is provided that, for certain reasons, in the event of a failure on the part of the contractor to complete the work "in such case the contractor shall be entitled to receive payment on his 6.5% compensation for only the cost of the work up to the date of termination of the contract, and shall not be entitled to receive any percentage *of sale price over total cost as provided in paragraph 6 hereof.*" (Emphasis supplied.) (Paragraph 6 is the section hereinabove first quoted.) By this language the parties themselves construed money "obtained from the sale of any house" to mean exactly what the words used clearly imply, namely, the sum paid by the purchaser.

I am at a loss to understand how an ambiguity can be found in the contract when the language thereof has a certain and generally accepted meaning. To warrant

the introduction of parol evidence there should be far more uncertainty than can be found in this case.

In my opinion the trial court correctly decided the question and the judgment should be affirmed.