Ruth EBKE, Lillie M. Parker, Lucy Smith, Pat Snyder, Wilbur H. Mead, Brenda Nielsen, Gerald Lammers, Michelene Svanda, Jane Kaltenback, Phil Snyder, Jean Williamson, Marvin Trennepohl, Sam Kobayaski, Ed Kippes, Dennis Thuringer, Carlene Burrow, Glenna M. Kizer, and Bruce K. Yearous, Plaintiffs-Appellants,

v.

JULESBURG SCHOOL DISTRICT NO. RE–1, in the County of Sedgwick and State of Colorado, Defendants-Appellees.

No. 78–571.

Colorado Court of Appeals, Div. II.

Sept. 18, 1980.

Rehearing Denied Oct. 23, 1980.

Hobbs & Waldbaum, P. C., William E. Brayshaw, Larry F. Hobbs, Denver, for plaintiffs-appellants.

Yegge, Hall & Evans, Carol M. Welch, Reese Miller, Denver, for defendants-appellees.

SMITH, Judge.

This case comes to us after having been remanded to the district court for a trial on the merits. *Julesburg School District RE-1 v. Ebke*, 193 Colo. 40, 562 P.2d 419 (1977). Plaintiffs, teachers in the Julesburg School District, appeal from a determination by the trial court denying them longevity credit for the academic year 1972–73. As a result, these teachers have been denied an equivalent of one year's longevity increment in their pay for each year subsequent to the 1972–73 academic year. We affirm in part, reverse in part, and remand the matter to the district court with directions.

For the 1972–73 academic year, the Board adopted a salary schedule pursuant to 1967 Perm.Supp., C.R.S.1963, § 123–18–5 (now in § 22–63–105, C.R.S.1973). Under the schedule, the Board deviated from prior practice by denying any longevity pay increment for that year. Thus, a teacher who had each year received a longevity increase based on service the previous year would receive no such increment by virtue of having taught during the academic year 1972–73. The Board froze longevity pay because of its understanding that longevity pay had to be included within the 5.5.% limitation on increases for salaries under Phase II of the federal wage and price freeze, then in effect. The Board determined that, in order to provide a salary schedule which would help attract new teachers into the system, it should increase the base pay of all teachers and freeze the longevity pay.

In subsequent years, although the Board re-established the longevity increment system, it refused to consider the year 1972–73 as an experience year for those teachers who had been with the district that year. Under the subsequent salary schedules adopted by the Board, however, those teachers who transferred into the Julesburg system from other school districts were given credit toward longevity pay for teaching experience gained in other school districts during the 1972–73 academic year. The effect has therefore been to place those teachers who taught within the Julesburg School District during the 1972–73 academic year one step behind those who have transferred into the system. The teachers assert that they are entitled to longevity pay increases not only for the 1972–73 academic year, the year that the freeze was imposed, but also credit for that year in calculating longevity pay for each of the subsequent years.

I.

A school board is charged with the duty of employing personnel to maintain and operate an educational program, § 22–32–109, C.R.S. 1973, and in exercising its authority with respect to that duty, the Board is vested with broad discretion. *Ball v. Weld County School District #RE-3J*, Colo.App. 16, 545 P.2d 1370 (1975). The Teacher Employment, Dismissal, and Tenure Act of 1967, § 22–63–101 et seq., C.R.S. 1973, creates, by law, a contract between the school board and its teachers. *Julesburg School District RE-1, supra.* Under this contract a school district must pay a teacher according to a salary schedule adopted by the Board. *Maxey v. Jefferson County School District, No. R-1*, 158 Colo. 583, 408 P.2d 970 (1965). Accordingly, in resolving this dispute, we must look to the salary schedules for the years in question, and analyze them under the existing contract law of the state.

The 1972–73 salary schedule provided at paragraph 2:

"Yearly increments for continuous experience within the Julesburg School system shall be $225 per year.* All teachers have probationary status during the first three years. * NOTE all longevity incre-

ments have been frozen for the academic year of 1972–73."

This language clearly indicates the intent of the Board to prohibit the payment of a longevity increment for that academic year, and thus we affirm the trial court with respect to denial of the increment for that year. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 195 Colo. 253, 577 P.2d 748 (1978).

## II.

■ The salary schedule for the academic year 1973–74 has *no* qualifying language with respect to incremental pay. The schedule states in paragraph 2: "Yearly increments for continuous experience within the Julesburg School System shall be $225 per year." This language is unambiguous and unqualified. Clearly, the Board intended that teachers should receive longevity pay for the 1973–74 contract year based upon their number of years of experience within the Julesburg School System. The contract for that year should have been construed to provide longevity pay for each year during which a teacher had worked within the Julesburg School District. *Radiology Professional Corp., supra.* Therefore, the order of the trial court is reversed insofar as it denies longevity pay in the appropriate amount for the academic year 1973–74.

## III.

With respect to the academic years 1974–75 through 1978–79, the salary schedules in each annual contract state:

"Yearly increments for continuous experience within the Julesburg school system shall be $225 per year. Note: no longevity increments were allowed on the 1972–73 teacher contracts."

■ The question is whether the language in this "Note" operates to deny those who taught in the Julesburg school system during the 1972–73 academic year longevity credit for that year in calculating their salaries in subsequent years. We conclude that it does not.

While the Board urges us to adopt an interpretation of the language which will deny longevity credit, we cannot do so based solely on the language employed. The operative effect or intention of the "Note" is not clear on its face; literally, it merely states an historical fact.

We conclude that the "Note" should be denied any operative effect. In reaching this conclusion, we are guided by two basic principles which govern the interpretation of contracts, namely:

1. "[I]n case of doubt a contract is construed most strongly against him who drafted it." *Christmas v. Cooley*, 158 Colo. 297, 406 P.2d 333 (1965).

2. "An interpretation which makes the contract or agreement fair and reasonable will be preferred to one which leads to a harsh or unreasonable result." *Hutchinson v. Elder*, 140 Colo. 379, 344 P.2d 1090 (1959).

The contracts make clear that one of the basic ongoing policies of the Board is to base a teacher's pay on the number of years of experience they have had teaching in the school system. This policy admittedly is based on the theory that a teacher with more experience is more valuable to the district, and is therefore entitled to more money. To deny one year's longevity credit in perpetuity to teachers who taught in the academic year 1972–73 flies in the face of this rationale. It creates a unique class of teachers who will always be one year, in terms of gross salary, behind those teachers with equivalent actual years of experience who taught in other districts in 1972–73 and became employed in this district thereafter. They will always have one year of their experience excluded for pay purposes while teachers employed subsequent to 1973 will be given credit for all of their teaching years. Without addressing the issue of whether the Board has the power to create such separate classes, we hold that, if such was the Board's intent, the language in the "Note" was not sufficiently specific to accomplish this purpose. The trial court's judgment denying one year's longevity credit in interpreting the 1974–79 contracts was therefore erroneous, and accordingly, we reverse in that regard.

We have considered other arguments raised by the parties and have found them to be without merit.

The judgment is reversed insofar as it denies credit for teaching in the 1972–73 academic year to teachers employed during that year as far as their pay in 1973–74, 1974–75, 1975–76, 1976–77, 1977–78, and 1978–79 is concerned. The cause is remanded with directions to enter judgments for plaintiffs in the appropriate amounts consistent herewith. The judgment is affirmed in all other respects.

PIERCE and STERNBERG, JJ., concur.