**ERDENBERGER, INC., a Colorado corporation, Plaintiff–Appellee,**

v.

**PARTEK NORTH AMERICA, INC., a Colorado corporation, Defendant– Appellant.**

No. 92CA0681.

Colorado Court of Appeals, Div. III.

March 11, 1993.

Rehearing Denied May 13, 1993.

Certiorari Denied Dec. 27, 1993.

DeMuro & Vamos, P.C., David R. DeMuro, Krendl Horowitz & Krendl, James R. Krendl, Denver, for plaintiff-appellant.

Grant McHendrie, P.C., Donald B. Gentry, Denver, for defendant-appellee.

Opinion by Judge NEY.

Defendant, Partek North America, Inc., appeals the declaratory judgment entered against it and in favor of plaintiff, Erdenberger, Inc. We affirm.

In January 1988, plaintiff entered into an agreement with defendant whereby plaintiff was engaged to research and develop the commercial applicability of defendant's products for horticultural purposes. Pursuant to its terms, this agreement terminated in January 1990 when neither party sought to renew it.

In June 1990, plaintiff entered into another agreement with defendant whereby plaintiff would exchange trademark rights for greenhouse equipment.

At issue here is the conflict between a provision of the 1988 agreement and one in the 1990 agreement. The royalty provision in the 1988 agreement states:

> [A]ll royalties provided hereunder shall continue, notwithstanding termination by [defendant] of this Agreement, for a minimum period of ten (10) years from the effective date hereof....

The 1990 agreement contains the provision that:

[U]pon the exchange of the bill of sale and the assignment, the [January 1988 agreement and two other agreements not at issue here] shall for all purposes terminate and become null and void.

At trial, defendant maintained that the 1990 agreement served to invalidate the royalty provision of the 1988 agreement and that it, therefore, ceased to be liable for payment of royalties to plaintiff when the 1990 agreement was executed.

The trial court concluded that an ambiguity existed and admitted evidence to determine the intent of the parties. Based upon this evidence, the trial court found that the royalty provision of the 1988 agreement remained in effect.

Consequently, royalty payments that had been withheld plus interest and costs were awarded to plaintiff. This appeal followed.

## I.

■ Defendant contends that the trial court erred in its conclusion that the 1990 agreement was ambiguous and, thus, in the admission of extrinsic evidence. We do not agree.

■ Defendant correctly notes that unambiguous contracts are to be enforced as written, *Wota v. Blue Cross & Blue Shield,* 820 P.2d 1137 (Colo.App.1991); that extraneous evidence is admissible to prove intent only if there is an ambiguity in the terms of the contract, *Radiology Professional Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 577 P.2d 748 (1978); and that we are not bound by the trial court's determination concerning the existence of an ambiguity. *Barnes v. Van Schaack Mortgage,* 787 P.2d 207 (Colo.App.1990).

Initially, defendant contends that because it is the 1990 agreement which is at issue, our search for ambiguity is limited to the four corners of that document. *Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984).

■ Specifically, defendant relies upon the language of the 1990 agreement that prior agreements "shall for all purposes terminate and become null and void," arguing that the words are not susceptible of more than one meaning, and that they should be given their plain and generally accepted meaning in reference to all the provisions of the agreement.

■ However, in determining whether a contract is ambiguous, a court may conditionally admit extrinsic evidence on this issue and needs to strike such evidence only if it determines that an ambiguity does not exist. 4 S. Williston, *Contracts* § 601 at 311 (W. Jaegar 3d ed. 1961); *Pepcol Manufacturing Co. v. Denver Union Corp., supra.*

Because defendant argues essentially that the 1990 agreement renders the specific obligations created by the 1988 agreement void despite language to the contrary, we disagree that our examination can be thus limited to the four corners of the 1990 agreement, and we find it necessary to examine both documents.

In so doing, we conclude that it is the attempt by the 1990 document to terminate that which had previously been terminated which is inherently ambiguous and that the wording which defines the *scope* of the termination does not resolve that ambiguity, but only intensifies it because the 1988 agreement provides for continuing obligations upon its termination. Therefore, because we agree with the trial court's conclusion that an ambiguity exists, we perceive no error in the admission of extrinsic evidence to ascertain the intent of the parties.

■ Next, we must examine that extrinsic evidence to determine if there is support for the trial court's conclusion that the parties intended for the royalty provision to survive the termination of the 1988 agreement as provided therein.

■ That the court strive to ascertain and give effect to the mutual intent of the parties is a fundamental principle of contract law, *Aetna Casualty & Surety Co. v. Canam Steel Corp.,* 794 P.2d 1077 (Colo.App.1990), and any evidence showing such intent is relevant. *Chase v. Collins,* 75 Colo. 156, 225 P. 255 (1924). Moreover, the clear intent of the parties is to be given greater regard than the possibly inept choice of words. *See Hutchinson v. Elder,* 140 Colo. 379, 344 P.2d 1090

(1959); *Stewart v. Public Industrial Bank,* 85 Colo. 546, 277 P. 782 (1929).

The agreements of 1988 and 1990 were negotiated by the same two individuals. Both individuals testified at trial that the 1990 agreement was a non-cash exchange of trademark rights for used greenhouse equipment of comparable value, that there was no waiver nor intent to relinquish royalty rights, and that the termination language was relevant only to another previous agreement between the parties which had not automatically terminated prior to June 1990. Defendant offered no contrary evidence on the issue of the intent of the parties relative to royalty rights.

Furthermore, defendant's contention that plaintiff intended to relinquish trademark rights worth $20,000 and royalties worth approximately $250,000 for used greenhouse equipment valued at $20,000 is not supported by the evidence or by logic.

In discerning the intent of the parties to a contract, the court may also look to the conduct of those parties prior to the controversy. Such conduct has been viewed as a reliable indication of intent. *Tucker v. Ellbogen,* 793 P.2d 592 (Colo.App.1989). Moreover, it has been held that a contemporaneous construction by a party prior to the controversy, which is contrary to the position taken by the party in the subsequent lawsuit, is binding upon that party. *BA Mortgage Co. v. Unisal Development, Inc.,* 469 F.Supp. 1258 (D.Colo.1979).

Here, the record indicates that royalties were paid to plaintiff without interruption from March 1989 to December 1990. This period spans the beginning of the royalty period under the 1988 agreement, that agreement's automatic termination in January 1990, the execution of the June 1990 agreement, and six months thereafter. Further, the royalty payments did not cease until the departure of the person who had negotiated the agreements from defendant's employ. At that time, that person's replacement, who had not been involved in negotiating either the 1988 or 1990 agreement, unilaterally ordered that the royalty payments cease.

The record, therefore, reflects uncontroverted evidence that the parties to the 1990 agreement considered it to be a non-cash exchange, did not intend that it affect the royalty payments under the 1988 contract, and that defendant continued to make royalty payments in accordance with its terms for almost a year after the 1988 agreement's automatic termination.

There is, thus, ample evidence to support the trial court's conclusion that it was not the intent of the parties when entering into the 1990 agreement that plaintiff forfeit its right to royalties still due in accordance with the previously terminated 1988 agreement. Consequently, we will not disturb it.

Having determined that the 1990 agreement did not affect the surviving royalty provision of the 1988 agreement, we need not address plaintiff's alternative request for reformation of the 1990 agreement nor defendant's request for return of royalties erroneously paid to plaintiff.

The judgment is affirmed.

CRISWELL and HODGES,* JJ., concur.