23CA1237 Marriage of Sunderman 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1237 Larimer County District Court No. 21DR1024 Honorable Susan Blanco, Judge In re the Marriage of Pamela Sunderman, Appellee, and Steven Sunderman, Appellant. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division I Opinion by JUDGE WELLING Schock and Berger*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Paige Mackey Murray LLC, Paige Mackey Murray, Boulder, Colorado, for Appellee Fischer Law Group, P.C., Erik G. Fischer, Ashleigh Bravo, Fort Collins, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 In this post-dissolution of marriage case, Steven Sunderman (husband) appeals the district court’s order adopting a magistrate’s judgment that imposed remedial contempt sanctions. We affirm the judgment and remand the case for further proceedings on wife’s request for appellate attorney fees. I. Background ¶ 2 Husband and Pamela Sunderman (wife) executed a separation agreement that, as relevant here, divided their marital estate. They submitted their agreement to the court, and, a few months later, a magistrate incorporated it into the decree dissolving their marriage. ¶ 3 Concerning their investment accounts, the separation agreement identified a J.P. Morgan account and a Charles Schwab account that husband had acquired before the marriage. The parties agreed that “as of October 31, 2021,” the value of the J.P. Morgan account was “$337,472” and that it had appreciated “$165,441” during the marriage. For the Schwab investment account, the parties agreed that “[t]he value of the account as of October 31, 2021[,] [was] $2,298,108” and that it had appreciated “$959,679” during the marriage. The separation agreement then 
2 directed the following allocation from the Schwab investment account: The marital appreciation of $959,679 shall be divided equally between the parties. Wife shall receive an additional $82,721 which is one-
half of the marital appreciation from [the] J.P. Morgan Chase Brokerage account . . . . In addition, [h]usband owes [w]ife $32,238 [which represented a portion of his equalization payment] . . . . In order to equitably divide the account, [h]usband shall transfer securities to [w]ife in similar proportion to those held in the entire account on October 31, 2021. ¶ 4 The separation agreement also identified multiple retirement and pension accounts. It provided that “[i]n order to equitably divide the marital portion of the party’s retirement/pension accounts, [w]ife shall receive as a sum certain the amount of $1,049,544 from [h]usband’s Charles Schwab Rollover IRA” and that he “shall transfer an additional $21,492 to [w]ife as a sum certain,” which represented the remaining balance of his equalization payment. ¶ 5 About nine months after the decree, wife filed a motion for remedial contempt. She alleged that, under her interpretation of the separation agreement, she was entitled to $594,798 from husband’s Schwab investment account and $1,071,036 from his 
3 Schwab IRA but that he transferred her only $480,132 from the Schwab investment account and $827,467 from the Schwab IRA. At the contempt hearing, husband disagreed with wife’s interpretation. He explained that the parties intended to equally divide the accounts’ gains or losses after they executed the separation agreement and that the amount he transferred to wife in September 2022 adjusted wife’s allocation for the losses in the accounts up to that date. ¶ 6 The magistrate agreed with wife’s interpretation of the separation agreement and concluded that husband was obligated to transfer a specific value of assets from the Schwab investment account ($594,798) and the Schwab IRA ($1,071,036). The magistrate determined that husband undisputedly violated this obligation and found him in contempt. As a remedial sanction, the magistrate directed husband to transfer to wife the additional $114,666 from the Schwab investment account and $243,568 from the Schwab IRA. The magistrate also awarded wife $3,274 for the attorney fees she incurred in connection with the contempt proceeding. 
4 ¶ 7 Husband petitioned the district court to review the magistrate’s contempt judgment, and the court adopted the magistrate’s ruling. II. Standard of Review ¶ 8 Our review of a district court’s order reviewing a magistrate’s ruling is effectively a second layer of appellate review. In re Marriage of Sheehan, 2022 COA 29, ¶ 22. We review de novo issues of law and, like the district court, must accept the magistrate’s factual findings unless they are clearly erroneous. Id. III. Interpretation of the Separation Agreement ¶ 9 Husband contends that the district court erred by adopting the magistrate’s interpretation of the separation agreement. He argues that the magistrate’s interpretation was contrary to the language of the agreement and improperly considered wife’s parol evidence. We disagree. A. Governing Legal Standards ¶ 10 A court’s interpretation of a separation agreement is a question of law that we review de novo. See In re Marriage of Crowder, 77 P.3d 858, 860 (Colo. App. 2003). 
5 ¶ 11 The primary goal when interpreting an agreement is to determine and give effect to the parties’ intent based primarily on the language of the agreement. Ad Two, Inc. v. City & Cnty. of Denver, 9 P.3d 373, 376 (Colo. 2000); Crowder, 77 P.3d at 860-61. We construe the agreement’s terms in accordance with their plain and generally accepted meanings. Ad Two, 9 P.3d at 376. Absent an ambiguity, a court may “not look beyond the four corners of the agreement to determine” the parties’ intent. Id. at 376-77. B. The Separation Agreement’s Plain Language ¶ 12 The magistrate determined that the plain language of the separation agreement entitled wife to “specific value[s]” from the Schwab investment account and the Schwab IRA. He explained that the parties identified the marital value of their assets on October 31, 2021, and set forth an exact value from the accounts to which wife was entitled. And the magistrate observed that the parties even clarified that wife shall receive a “sum certain” from the Schwab IRA. The magistrate further explained that the parties could have included language in the agreement for “a different transfer arrangement, such as allocating gains or losses from October 31, 2021[,] forward or awarding a percentage of the 
6 account as of the transfer date, as [husband] now” argues, “but they did not.” The magistrate also determined that although they agreed that “[i]n order to equitably divide the [Schwab investment] account, [h]usband shall transfer securities to [w]ife in similar proportion to those held in the entire account on October 31, 2021,” this language did “not speak to the value of securities to be transferred, but rather the type of security” and the manner by which he must transfer those securities to wife. The magistrate noted that his interpretation was consistent with husband’s testimony that the parties “drew a line on October 31, [2021],” and that the value of wife’s marital property was “defined on that date.” ¶ 13 Upon our review of the separation agreement, we agree with the magistrate and conclude that its plain and unambiguous language entitled wife to $594,798 from the Schwab investment account and $1,071,036 from the Schwab IRA. The agreement defined a specific value that wife would receive from each of these accounts, which included a set value (1) for the marital appreciation of the investment accounts; (2) for her share of the retirement and pension accounts; and (3) “to equalize the division of the” entire marital estate. And even though the agreement acknowledged that 
7 the date on which husband could transfer the assets may be delayed, nothing within the plain language of the agreement adjusted wife’s allocation for a later change to the value of the Schwab investment account or the Schwab IRA. (Indeed, the agreement directed that “the initiation of the division of all accounts shall be done within 14 days after the issuance of the [d]ecree.”) ¶ 14 Husband disputes this interpretation, arguing that because they agreed that he must transfer the securities from the Schwab investment account “in similar proportion to those held in the entire account on October 31, 2021,” the parties intended to adjust wife’s allocation in accordance with the gains or losses until the date of his transfer. But as the magistrate observed, this sentence addresses the types of “securities,” not the value of wife’s allocation. Moreover, wife testified that the type of securities transferred to her could have significant tax implications. She explained that if husband directed Schwab to transfer assets on a “first in, first out” basis she “would receive the shares that most likely [had] the highest capital gains” because they would be the shares held the longest in the account. But if husband transferred securities in proportion to the entire account’s holding (a “pro rata” transfer), the 
8 later tax obligation would be shared proportionately. Husband didn’t dispute this representation, and the record reveals that he directed a “PRO RAT[A]” transfer to wife in September 2022. ¶ 15 Husband also argues that interpreting the agreement to require that he pay wife $594,798 from the Schwab investment account and $1,071,036 from the Schwab IRA established “a new valuation date.” Not so. The parties determined an exact value of marital assets allocated to wife from the Schwab investment account and Schwab IRA as of October 31, 2021, and husband was obligated to give wife that exact amount. This valuation date was also consistent with the valuation and allocation of their other marital assets, which they used to determine husband’s equalization payment. It, instead, is husband’s purported interpretation that attempts to create a new valuation date based on the value of the accounts at the time he completed the transfer. ¶ 16 Still, husband argues that the parties intended to “equitably divide” their marital assets and that it is inequitable to have him bear the losses sustained in the accounts after October 31, 2021. But the agreement’s plain language didn’t adjust the value of wife’s allocation for any subsequent losses, and husband still agreed that 
9 the terms of their agreement were “equitable” when he executed it. Moreover, any losses realized after the dissolution decree wouldn’t have been part of the equitable allocation of the marital estate. Cf. In re Marriage of Hiner, 710 P.2d 488, 492 (Colo. 1985) (“[T]he appreciation in value of each party’s [marital] equity . . . realized after entry of the . . . decree should not have been treated as part of a disposition of marital property . . . .”); In re Marriage of Collins, 2023 COA 116M, ¶ 26 (upholding a court’s decision that declined to allocate losses in an investment account sustained after the dissolution). ¶ 17 Husband further argues that the provision on the Schwab IRA had language different than that used for the Schwab investment account and interpreting both to require a specific amount from husband renders certain language in the agreement meaningless. See Moeller v. Ferrari Energy, LLC, 2020 COA 113, ¶ 25 (“We avoid an interpretation of an agreement that would nullify any of its terms or provisions.”). Specifically, he highlights that wife was entitled to “a sum certain” from the Schwab IRA but that phrase was missing from the Schwab investment account provision. However, we must “give effect to the general purposes of a contract,” and in doing so, 
10 “make due allowance for a common human failing . . . of being careless in choosing words.” Ad Two, 9 P.3d at 377 (quoting Hutchinson v. Elder, 140 Colo. 379, 383, 344 P.2d 1090, 1092 (1959)). Both provisions set forth wife’s entitlement to a specific value from the accounts, and while the parties included the phrase “a sum certain” when discussing the Schwab IRA, we don’t agree that the absence of that phrase for the Schwab investment account “defeat[s] the evident intentions of the parties” — that wife receive a specific value from each account. Id. (quoting Hutchinson, 140 Colo. at 383, 344 P.2d at 1092). ¶ 18 Husband also complains that wife didn’t adhere to the agreement when she unreasonably refused a previous attempt to transfer the funds to her. However, he doesn’t explain how that purported conduct alters our or the magistrate’s interpretation of the parties’ intent when executing the separation agreement. See Hefley Ranch, Inc. v. Stewart, 764 P.2d 415, 416 (Colo. App. 1988) (“The interpretation of a contract requires the court to ascertain the parties’ intent at the time the document was executed . . . .”). To the extent he is suggesting that wife’s conduct excused his noncompliance, the magistrate found, albeit implicitly, no reason to 
11 do so, and the record supports that finding. See In re Parental Responsibilities Concerning S.Z.S., 2022 COA 105, ¶ 23 (recognizing that a court’s finding may be implicit in its ruling). ¶ 19 And although husband generally notes that the magistrate denied wife’s previous contempt motion, he doesn’t develop any legal or factual argument to explain why that ruling has any bearing on the magistrate’s decision or our interpretation of the separation agreement. See id. at ¶ 29 (declining to address a party’s undeveloped argument). ¶ 20 The district court therefore didn’t err by adopting the magistrate’s interpretation of the separation agreement. C. Parol Evidence ¶ 21 Husband next contends that the magistrate improperly considered parol evidence of the parties’ intent when the magistrate allowed wife to testify that before executing the separation agreement, she and husband agreed that her allocation from the Schwab investment account and the Schwab IRA wouldn’t be subject to an adjustment for the accounts’ subsequent gains or losses. We discern no reversible error. 
12 ¶ 22 A court may not consider extraneous evidence of the parties’ intent to interpret an agreement unless the terms of the agreement are ambiguous. Crowder, 77 P.3d at 861. However, a court may consider extrinsic evidence to determine whether an agreement is ambiguous. Bledsoe Land Co. LLLP v. Forest Oil Corp., 277 P.3d 838, 843 (Colo. App. 2011). ¶ 23 When wife testified, the magistrate had not yet determined whether the separation agreement was unambiguous. Thus, the magistrate’s admission of the testimony at that time appeared to be within his discretion. See In re Parental Responsibilities Concerning A.M., 251 P.3d 1119, 1124 (Colo. App. 2010) (reviewing an evidentiary ruling for an abuse of discretion). ¶ 24 But even if we were to assume that the court erred, we disregard an error that doesn’t affect the parties’ substantial rights. In re Parental Responsibilities Concerning E.E.L-T., 2024 COA 12, ¶ 30; see C.A.R. 35(c). An error affects a party’s “substantial right only if it substantially influenced the outcome of the case or impaired the basic fairness of the trial.” E.E.L-T., ¶ 30. ¶ 25 The magistrate neither mentioned nor indicated that he considered wife’s testimony when interpreting the separation 
13 agreement. And as discussed above, the plain, unambiguous language of the separation agreement established that the parties intended to allocate wife a specific value of assets from the Schwab investment account and the Schwab IRA. We thus aren’t persuaded that any improper admission of wife’s testimony warrants reversal. See In re Estate of DeWitt, 32 P.3d 550, 556-57 (Colo. App. 2000), rev’d on other grounds, 54 P.3d 849 (Colo. 2002) (concluding that when the parties’ intent may be determined from the face of the separation agreement, the court’s consideration of extrinsic evidence was harmless). IV. Remedial Contempt ¶ 26 We also reject husband’s contention that the evidence was insufficient to support the judgment of remedial contempt. ¶ 27 Whether a party is in contempt lies within the court’s sound discretion, and we won’t disturb the court’s decision absent a showing that it acted in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplied the law. Sheehan, ¶ 23. ¶ 28 A court may hold a party in contempt for “disobedience or resistance” to a lawful court order. C.R.C.P. 107(a)(1); see Sheehan, ¶ 24; see also In re Marriage of Meisner, 807 P.2d 1205, 1208 (Colo. 
14 App. 1990) (explaining that a separation agreement incorporated into a dissolution decree is an enforceable judgment). To impose remedial sanctions, the court must find that the contemnor failed to comply with the order, knew of the order, and has the present ability to comply. In re Parental Responsibilities Concerning A.C.B., 2022 COA 3, ¶ 24. The court must also specify the means by which the contemnor may purge the contempt and find that the contemnor has the present ability to satisfy that purge clause. In re Estate of Elliott, 993 P.2d 474, 479 (Colo. 2000); see C.R.C.P. 107(d)(2). ¶ 29 Husband asserts that under his interpretation of the separation agreement, he didn’t violate the order. But as explained above, the agreement required him to transfer wife $594,798 from the Schwab investment account and $1,071,036 from the Schwab IRA. And the undisputed evidence showed that he didn’t comply with his obligation. See Elliott, 993 P.2d at 479 (noting that a court’s factual findings in support of contempt are binding on review unless they are clearly erroneous). ¶ 30 Husband also asserts that there was no indication he was aware that he would be subject to wife’s interpretation of the 
15 agreement. Even if husband interpreted the agreement differently, that doesn’t negate his knowledge of the order for purposes of remedial contempt. See In re Marriage of Cyr, 186 P.3d 88, 94 (Colo. App. 2008). And the magistrate found, with record support, that husband did “not dispute the existence of [a] lawful order[]” or his “knowledge of the order.” See Elliott, 993 P.2d at 479. ¶ 31 Husband further argues that it wasn’t established that he had the then-present ability to purge the contempt. The magistrate ordered husband to transfer wife an additional $114,666 from the Schwab investment account and $243,568 from the Schwab IRA to purge his contempt. The magistrate determined that husband had “the present ability to comply, he maintain[ed] sufficient securities in the account[s] and indicated at the hearing that he could and would comply with” the magistrate’s interpretation of the separation agreement. The record supports the magistrate’s findings. See id. And husband doesn’t otherwise explain how the magistrate’s findings didn’t establish his ability to purge the contempt. ¶ 32 Additionally, husband asserts that “there is no indication that the funds remaining after the transfer would be sufficient to support equitability.” The magistrate wasn’t required to make a 
16 finding of “equitability” to impose remedial contempt sanctions, and husband doesn’t further develop this argument. See S.Z.S., ¶ 29. ¶ 33 The record thus supports the magistrate’s imposition of remedial contempt sanctions. V. Attorney Fees Award ¶ 34 Husband argues that the magistrate erred by awarding wife her reasonable attorney fees because her motion for contempt asserted no legal authority for such a request. But he neither raised this issue to the magistrate in opposition of wife’s request for attorney fees nor to the district court in his petition for review. We therefore won’t address the issue for the first time on appeal. See People in Interest of K.L-P., 148 P.3d 402, 403 (Colo. App. 2006) (holding that an issue not raised in a petition for district court review may not be raised for the first time on appeal); cf. Valentine v. Mountain States Mut. Cas. Co., 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) (“A party’s mere opposition to its adversary’s request . . . does not preserve all potential avenues for relief on appeal.”). ¶ 35 But even if we were to assume that husband preserved this argument, the magistrate didn’t abuse his discretion by awarding fees. See Collins, ¶ 51 (reviewing award of attorney fees for an 
17 abuse of discretion). A court “may” deny a motion if the moving party fails to include legal authority in the motion, but nothing requires it to do so. C.R.C.P. 121, § 1-15(3); see A.S. v. People, 2013 CO 63, ¶ 21 (The “use of the term ‘may’ is generally indicative of a grant of discretion or choice among alternatives.”). Thus, even though wife’s motion for remedial contempt didn’t include legal authority in support of her attorney fees request, the magistrate reasonably determined that C.R.C.P. 107(d)(2) permitted him to award wife the fees she incurred in connection with the remedial contempt proceeding. ¶ 36 Husband additionally argues that because the magistrate erred by entering the remedial contempt judgment, we must also reverse the award of attorney fees. But because we have rejected his contentions of error, we necessarily reject this argument. ¶ 37 The district court therefore didn’t err by upholding the magistrate’s attorney fees award. VI. Appellate Attorney Fees and Costs ¶ 38 Wife requests an award of her appellate attorney fees pursuant to C.R.C.P. 107(d)(2) because she incurred these fees in connection with the contempt proceeding. Such an award of fees may be 
18 assessed within the court’s discretion, and we, therefore, remand this issue to the district court to determine wife’s entitlement to and the amount of her appellate attorney fees, if any. See id.; In re Marriage of Dean, 2017 COA 51, ¶ 33; Madison Cap. Co., LLC v. Star Acquisition VIII, 214 P.3d 557, 562 (Colo. App. 2009). ¶ 39 Wife also requests attorney fees under section 13-17-102, C.R.S. 2023. Though a close call, we don’t agree that husband’s appeal lacked substantial justification and, thus, deny this request. See Glover v. Serratoga Falls LLC, 2021 CO 77, ¶ 70 (recognizing that an award of attorney fees under section 13-17-102 is appropriate only in clear and unequivocal cases of egregious conduct where no rational argument is presented). ¶ 40 Costs are taxed in accordance with C.A.R. 39(a)(2). VII. Disposition ¶ 41 The judgment is affirmed. The case is remanded to the district court to consider wife’s request for C.R.C.P. 107(d)(2) attorney fees. JUDGE SCHOCK and JUDGE BERGER concur.