In re the **MARRIAGE OF Katherine CROWDER, Appellee,**

and

**Jerry Crowder, Appellant.**

No. 02CA0838.

Colorado Court of Appeals, Div. A.

May 22, 2003.

As Modified on Denial of Rehearing July 24, 2003.

Katherine Crowder, pro se.

Frascona Joiner Goodman & Greenstein, P.C., Gregg A. Greenstein, Boulder, Colorado, for Appellant.

Opinion by Judge WEBB.

In this post-dissolution of marriage proceeding, Jerry Crowder (father) appeals from the trial court's order requiring that he contribute to the college costs of the parties' son. He contends that under the parties' separation agreement, this obligation has lapsed because of the son's emancipation and, if not, the obligation is limited by § 14–10–115(1.5), C.R.S.2002. We affirm in part, reverse in part, and remand for further proceedings.

The marriage of father and Katherine Crowder (mother) was dissolved by decree on January 1, 1991. As pertinent to child support and college costs, the parties' separation agreement, which was incorporated into the decree, provides:

5. *Child Support:*

a). Husband shall pay child support to wife in the amount of

. . .

c). *Higher Education Costs:* The parties agree that both of their children are entitled to a four year college education or an equivalent vocational or technical education. The parties therefore agree that each shall contribute to the costs of such education in amounts and proportions to be mutually agreed upon no later than each child's junior year in high school, and annually thereafter. In the event the parties are unable to agree, the issue of contribution to the educational expenses of the children shall be submitted to mediation/arbitration as provided in paragraph (3) above.

. . .

f). *Emancipation:* The child support obligations specified above shall terminate upon the death or emancipation of the children. For purposes of this Agreement,

emancipation shall occur upon the following occurrences:

1). Attainment of age 21 years by the child;

2). Marriage of the child;

3). Entry into the Armed Forces by the child;

4). Separation of the child from the home of either party, and establishment by the child of self-sufficiency and financial independence. Leaving home for purposes of attending college does not constitute emancipation; and

5). Any other grounds for declaration of emancipation as provided by law.

Father moved to modify the decree concerning child support on the basis that his obligation to contribute to college costs terminated when the son reached nineteen years of age because, for child support orders entered prior to July 1, 1997, under § 14–10–115(1.5)(a), C.R.S.2002, emancipation now occurs at age nineteen and child support then terminates. He also asserted that even if the separation agreement requires him to contribute to college costs despite the son's emancipation, the statute precludes an obligation exceeding the presumptive monthly amount under the statutory child support guideline and the obligation lapses at the earlier of the son's twenty-first birthday or college graduation.

The motion was heard before a magistrate. Although the order in the record is unsigned, the parties and the trial court agree that the magistrate rejected father's emancipation argument, entered findings as to each party's income, and ordered father to pay forty-four percent of the son's college costs related to tuition, books, and fees. Payment of forty-four percent of room and board expenses was ordered if the child resides in the home of one parent while attending school or during periods of time in excess of thirty days when school is not in session until the child attains the age of nineteen. The magistrate apparently also ordered father to reimburse mother for his forty-four percent share of $10,384.74 in expenses she testified to having previously paid for the son's college costs.

Father filed a timely motion for review in the trial court, but did not dispute that a comparison of the parties' incomes supported his forty-four percent share. The trial court first concluded that the parties had waived the mediation and binding arbitration provision of the separation agreement.

The trial court then found that the separation agreement was ambiguous as to the effect of emancipation on the college costs obligation. The court determined that subparagraph 5(c) of the agreement, which specifically contemplated a four-year college education, was inconsistent with termination of this obligation at age twenty-one. The court concluded that "subsection (c) was indicative of the parties' clear intent to contribute to four years of college expenses even if they were incurred beyond age twenty-one."

The court also upheld the magistrate's determination that the parties' contribution toward college costs should be proportionate to their respective gross incomes. Finally, the court concluded that the separation agreement controlled over § 14–10–115(1.5)(a) and confirmed the magistrate's order that father was obligated to pay forty-four percent of the college costs already incurred and to be incurred in the son's four-year degree program.

I.

Father first contends the trial court erred in determining that subparagraph 5(c) of the separation agreement concerning college costs controlled over the termination provisions set forth in subparagraph 5(f) and in § 14–10–115(1.5)(a). We disagree as to the separation agreement, but agree as to the statute.

A.

■ The interpretation of a written contract and the determination whether the contract is ambiguous are questions of law on which we need not defer to the trial court. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo.1996); *In re Marriage of Thomason*, 802 P.2d 1189 (Colo.App.1990).

■ In construing a contract, our goal is to give effect to the intention of the parties

as determined primarily from the language of the contract itself. *USI Properties East, Inc. v. Simpson*, 938 P.2d 168 (Colo.1997). Extrinsic evidence of intent is relevant only if, upon examination of the entire contract, the terms are ambiguous. The fact that the parties to a contract disagree over its meaning does not render the agreement ambiguous. *In re Marriage of Anderson*, 711 P.2d 699 (Colo.App.1985).

▮ To determine whether ambiguity exists, the language of the contract must be construed by application of the accepted meaning of the words and with reference to all its provisions. The nature of the transaction that forms the contract subject matter also must be considered. *In re Marriage of Norton*, 757 P.2d 1127 (Colo.App.1988). An ambiguity will exist if the language of the contract is susceptible of more than one reasonable interpretation, and, absent ambiguity, the court is constrained to determine the meaning intended by the parties from the four corners of the agreement. *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373 (Colo.2000).

▮ We agree with the trial court that the structure of the agreement creates an ambiguity. Subparagraph 5(c), which appears under the heading of child support, expressly states the agreement of the parties that "both of their children are entitled to a four-year college education" and contemplates that each party will each contribute to the costs of such an education. Assuming normal educational progress, a child would be unable to complete a four-year undergraduate program by age twenty-one, the emancipation age for child support set forth in the separation agreement.

The sole extrinsic evidence presented by father involved a 2000 stipulation in which the parties agreed, among other things, that the son would be emancipated on his nineteenth birthday in 2001 and support for the other child would then be reduced. However, the stipulation does not address college costs. Hence, we look elsewhere to resolve the ambiguity.

▮ The obligation to fund higher education created by subparagraph 5(c) is more specific than the language in subparagraph 5(f)(1) terminating all forms of "child support" described in paragraph 5 upon emancipation. In resolving conflict between terms of an agreement, specific provisions prevail over general provisions. *E–470 Public Highway Authority v. Jagow*, 30 P.3d 798 (Colo. App.2001), *aff'd*, 49 P.3d 1151 (Colo.2002).

Accordingly, we conclude that the parties' intention in subparagraph 5(c) to share four years of college costs prevails over the emancipation language in subparagraph 5(f)(1).

Father also argues that *In re Marriage of Robb*, 934 P.2d 927 (Colo.App.1997), is dispositive of this issue. We are not persuaded.

That case involved the interpretation of a 1987 separation agreement providing that the father was required to pay child support in the amount of $150 per month for each child until that child reached "the age of 21, or has completed four years of college, whichever shall occur later, or is *emancipated by law*, dies, or until further order of the Court." *In re Marriage of Robb, supra*, 934 P.2d at 928. The father moved to terminate his support obligation for two of the children who were then nineteen and twenty-two years old. He argued that termination was required under the version of the statute then in effect, which provided in terms substantially similar to the current statute that:

(a) Unless a court finds that a child is otherwise emancipated, emancipation occurs and child support terminates when the child attains nineteen years of age unless one or more of the following conditions exist:

(I) The parties agree otherwise in a written stipulation after July 1, 1991.

(II) If the child is mentally or physically disabled [support may be ordered].

(III) If the child is still in high school or an equivalent program ... [and if] there is an order for postsecondary education ... support continues through postsecondary education as provided in [§ 14–10–115(1.5)(b)(I), C.R.S.2002].

Colo. Sess. Law 1991, ch. 38, § 14–10–115(1.5)(a) at 235; Colo. Sess. Laws 1994, ch. 266, § 14–10–115(1.5) at 1536–37.

The division in *In re Marriage of Robb, supra,* first noted that no order had been requested or entered respecting higher education pursuant to § 14–10–115(1.5)(b)(I). The division further noted that the parties' agreement specifically provided that the father's support obligation was to terminate when each child became emancipated by law. Thus, the division concluded that the father's support obligation terminated when each child reached age nineteen under the statute.

Here, the issue involves the parties' obligation to pay college costs, which the separation agreement addresses specifically and in a separate subparagraph from child support. In contrast, the agreement in *In re Marriage of Robb* used completion of four years of college as one of several benchmarks for termination of child support, not to describe a separate obligation.

Accordingly, we conclude that *In re Marriage of Robb* does not control the separation agreement.

### B.

 Nevertheless, we agree with father that the trial court's order is subject to § 14–10–115(1.5)(b)(I), which provides in pertinent part, "[i]f the court finds that it is appropriate for the parents to contribute to the costs of a program of postsecondary education," certain limitations apply, including "[t]he order for postsecondary education support may not extend beyond the earlier of the child's twenty-first birthday or the completion of an undergraduate degree."

Had the magistrate or the trial court ordered the parties to mediate and, if necessary, arbitrate this dispute, as provided in the separation agreement, § 14–10–115(1.5)(b)(I) might not be controlling. *See Byerly v. Kirkpatrick Pettis Smith Polian, Inc.,* 996 P.2d 771 (Colo.App.2000)(arbitrators not bound by substantive or procedural law). However, instead both the magistrate and the trial court entered orders requiring contribution to "costs of a program of postsecondary education."

Subsection (1.5) applies "to all child support obligations established or modified as a part of any proceeding ... prior to July 1,

1997." Section 14–10–115(1.5)(c), C.R.S.2002. The obligation here at issue was established by decree in 1991.

The plain language of the statute creates no exemption for separation agreements entered into under and consistent with earlier legislation. Mother has not raised, and we express no opinion concerning, application of the constitutional prohibitions against impairing the obligation of contracts. *See generally* U.S. Const. art. I, § 10, cl. 1; Colo. Const. art. II, § 11.

*In re Marriage of Channell,* 797 P.2d 819 (Colo.App.1990), cited by the trial court, does not preclude this relief because father did not appeal the 1991 decree. Father seeks modification of the original decree based on a later statutory change, which could not have been raised in an appeal from entry of the decree.

Accordingly, on remand the trial court shall modify its order to reflect, among other things, that father's college cost obligation terminates upon the earlier of the son's twenty-first birthday or his completion of a four-year program.

### II.

 Father next contends the trial court erred by failing to limit his college cost obligation to the presumed monthly child support guideline amount as required by § 14–10–115(1.5)(b)(I) and to "[t]uition, books, and fees" under § 14–10–115(1.5)(e), C.R.S.2002. We agree only as to the child support guideline amount.

### A.

In ordering a parent to contribute to college costs, "the court shall be limited to an amount not to exceed the amount listed under the schedule of basic child support obligations." Section 14–10–115(1.5)(b)(I). For the reasons discussed above, we conclude that the order enforcing the decree is also subject to this limitation.

Our conclusion that father's college cost obligation cannot exceed the presumed child support guideline amount also has potential application to the arrearage for expenses al-

ready incurred by mother. Before the magistrate, mother testified from an itemized printout of those expenses. The printout was never made a part of the record, and mother's testimony did not identify either particular expenses or the period of time over which the expenses were incurred. Hence, the trial court must determine father's forty-four percent share of the expenses incurred by mother, averaged on a monthly basis, and then apply the monthly child support guideline limitation.

Accordingly, on remand the trial court must clarify its order to establish that the college costs for which father is responsible, both retrospectively and in the future, do not exceed the lesser of his forty-four percent share of the expenses incurred or the presumed child support guideline amount on a monthly basis.

### B.

 However, father did not seek modification of the decree or challenge the arrearage on the basis of § 14–10–115(1.5)(e), which limits "postsecondary education support" to "[t]uition, books, and fees." He also did not make this argument to the trial court in seeking review of the magistrate's order. Hence, we will not entertain it on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992).

### III.

Father finally argues that his college cost obligation should be deducted from his gross income for purposes of calculating his support obligation for the parties' younger child. We are unable to discern whether the trial court in this proceeding entered any orders with respect to the support obligation for the younger child. If so, the court on remand shall make the adjustment requested pursuant to § 14–10–115(1.5)(b)(I); if not, then father can pursue the requested adjustment through another motion to modify.

The order is reversed to the extent it provides that father's obligation for child

support (1) extends beyond the earlier of the son's twenty-first birthday or completion of a four-year program and (2) exceeds father's forty-four percent share of the lesser of the expenses incurred or the presumptive guideline amount. In all other respects, the order is affirmed. The case is remanded to the trial court for further proceedings and entry of a revised order consistent with this opinion.

Justice ERICKSON * and Judge METZGER, concur.