In re the MARRIAGE of James
H. CHALAT, Appellant,

and

Nancy S. Chalat, n/k/a Nancy
S. Shapiro, Appellee.

Nos. 02CA0734, 02CA2001.

Colorado Court of Appeals,
Div. IV.

March 11, 2004.

Certiorari Granted July 26, 2004.

Canges, Iwashko, Bethke & Bailey, P.C., James S. Bailey, Denver, Colorado, for Appellant.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; James J. Keil, Jr., Wheat Ridge, Colorado; Michael P. Zwiebel, Boulder, Colorado, for Appellee.

Opinion by Judge LOEB.

James H. Chalat (father) appeals from two postdecree orders for the payment of child support and postsecondary education expenses for the daughter born of his marriage to Nancy S. Shapiro (mother). We affirm in part, reverse in part, and remand for further proceedings.

The parties' brief marriage was dissolved in 1984, and the decree incorporated a separation agreement, which provided, as pertinent here:

5. *Child support*

a) *Cash payment.* [Father] shall pay to [mother], as and for child support, the sum of $500.00 per month ... until the child is twenty-one (21) years of age or emancipated, whichever first occurs.....

c) *College Tuition and Expenses.* [Father] shall be responsible for payment of the child's tuition, room, board, books and fees for four years at an undergraduate college through child's twenty-second (22nd) birthday, should the child decide to pursue a college degree.

The parties agree that at the time the child commences college they will reassess [father's] child support obligation, taking into consideration [father's] obligation for the child's college expenses.

Mother moved to modify child support in 1993 based upon adoption of the child support guidelines and changed circumstances. The parties reached a written stipulation in 1994, which was approved and made an order of the court. They agreed that father would pay $500 as the base amount of support. They also agreed that they would meet no later than April 30 each year, beginning in 1995, to review their incomes and to calculate support for the prior year; that father would pay, if due, a lump sum of additional retroactive child support by May 15; and that they would mediate prior to seeking court enforcement of the stipulation. They further agreed that all other provisions of the existing orders would remain in full force and effect. Finally, the parties agreed that the Colorado Child Support Guidelines and Colorado law set out the standard for determining child support obligations of each party, and they agreed to those guidelines.

Mother sought another modification in 2001 based upon a substantial and continuing change of circumstances. She also requested enforcement of the 1994 stipulation, seeking payment of child support arrearages due under the agreement since 1995. Father sought a declaratory judgment as to the extent of his obligation for postsecondary education expenses.

After a hearing, the magistrate concluded that father was obligated to pay child support arrearages of $26,836 within twenty-four months; the provision of the 1984 separation agreement for postsecondary education expenses was contractual in nature, nonmodifiable, and reaffirmed in 1994; it was not unreasonable for the child to attend the University of Vermont; father was responsible for the tuition, room, board, books, and fees at an undergraduate college until the child reached the age of twenty-two, when she would become emancipated; and father was required to pay $14,000 of the $21,621.88

attorney fees incurred by mother. The magistrate later corrected some clerical errors, and on review, the district court affirmed.

In a subsequent order, the magistrate rejected father's argument that its prior order was nonmodifiable and ordered father to pay the postsecondary education expenses incurred by his daughter at the University of Pennsylvania, to where she had transferred. The district court affirmed.

## I.

■ Father first contends that the magistrate and district court erred in not limiting his college expense obligation under the statutory child support guidelines. He argues that the court's determination that his obligation was nonmodifiable and contractual was erroneous as a matter of law. We agree.

The pertinent provisions of § 14–10–115(1.5), C.R.S.2003, provide that:

(a) For child support orders entered prior to July 1, 1997, unless a court finds that a child is otherwise emancipated, emancipation occurs and child support terminates when the child attains nineteen years of age unless one or more of the following conditions exist:

(I) The parties agree otherwise in a written stipulation after July 1, 1991. ....

(b)(I) If the court finds that it is appropriate for the parents to contribute to the costs of a program of postsecondary education, then the court shall terminate child support and enter an order requiring both parents to contribute a sum determined to be reasonable for the education expenses of the child, taking into account the resources of each parent and the child. In determining the amount of each parent's contribution to the costs of a program of postsecondary education for a child, the court shall be limited to an amount not to exceed the amount listed under the schedule of basic child support obligations in paragraph (b) of subsection (10) of this section for the number of children receiving postsecondary education. . . . In no case shall the court issue orders providing for both child support and postsecondary education to be paid for the same time period for the same child regardless of the age of the child. Either parent or the child may move for such an order at any

time before the child attains the age of twenty-one years. . . . The order for postsecondary education support may not extend beyond the earlier of the child's twenty-first birthday or the completion of an undergraduate degree. . . . If the child resides in the home of one parent while attending school or during periods of time in excess of thirty days when school is not is session, the court may order payments from one parent to the other for room and board until the child attains the age of nineteen. . . .

(c) This subsection (1.5) shall apply to all child support obligations established or modified as a part of any proceeding, including but not limited to articles 5, 6, and 10 of this title and articles 4 and 6 of title 19, C.R.S., prior to July 1, 1997. This subsection (1.5) shall not apply to child support orders established on or after July 1, 1997, which shall be governed by subsection (1.6) of this section.

(c.5) An order for postsecondary education expenses entered between July 1, 1991, and July 1, 1997, may be modified pursuant to this subsection (1.5) to provide for postsecondary education expenses subject to the statutory provisions for determining the amount of a parent's contribution to the costs of postsecondary education, the limitations on the amount of a parent's contribution, and the changes to the definition of postsecondary education consistent with this section as it existed on July 1, 1994. An order for child support entered prior to July 1, 1997, that does not provide for postsecondary education expenses shall not be modified pursuant to this subsection (1.5).

(d) Postsecondary education support may be established or modified in the same manner as child support under this article.

(e) For the purposes of this section, "postsecondary education support" means support for the following expenses associated with attending a college, university, or vocational education program: Tuition, books, and fees.

A division of this court recently addressed some of the provisions concerning the obligation for postsecondary education expenses

in *In re Marriage of Crowder,* 77 P.3d 858 (Colo.App.2003). In *Crowder,* the parties reached a separation agreement prior to July 1, 1991, in which they agreed to share the costs of four years of undergraduate college education in proportions to be mutually agreed upon by the parties. In 2000, the parties stipulated to adopt the age of emancipation at nineteen and agreed to reduce the amount of support. They did not modify their prior agreement to contribute to college expenses for a four-year education.

Based on the plain language of § 14–10–115(1.5)(c), the division in *Crowder* concluded that the statute was applicable to the pre-July 1, 1991, separation agreement because the statute created no exemption for separation agreements entered into under and consistent with earlier legislation. The division also concluded that the order for postsecondary education expenses was subject to the limitations set forth in § 14–10–115(1.5)(b)(I). Thus, the case was remanded to the trial court to modify the father's obligation for college costs to reflect that it terminated upon the earlier of the son's twenty-first birthday or his completion of a four-year undergraduate program. The division also concluded that the father's obligation was limited to the presumed monthly child support guideline amount. It did not agree that the father's obligation was defined by § 14–10–115(1.5)(e) to be only tuition, books, and fees because the father failed to request that the trial court so limit his obligation.

Seeking to uphold the magistrate's order, mother argues that the decision in *Crowder* is not dispositive here because the division there erroneously relied solely on § 14–10–115(1.5)(c), without considering the provisions of § 14–10–115(1.5)(c.5) and (d). She argues that the more specific § 14–10–115(1.5)(c.5) controls over § 14–10–115(1.5)(c), and she maintains that the legislative history shows that the General Assembly intended to make orders entered prior to July 1, 1991, nonmodifiable. We disagree and conclude that § 14–10–115(1.5)(c) and (c.5) can and should be harmonized.

#### A.

Initially, we reject the magistrate's conclusion that the terms of the parties' pre-July 1, 1991, separation agreement were binding on the court because they were contractual and nonmodifiable. *See* § 14–10–112(2), (6), C.R.S.2003 (terms of separation agreement *except* those for allocation of parental responsibilities, support, and parenting time are binding on the court, and modification of such terms may be precluded or limited); *In re Marriage of Robb,* 934 P.2d 927 (Colo.App.1997)(revised statutory age of emancipation applied to pre–1991 separation agreement).

We also disagree with mother that § 14–10–115(1.5)(d), which allows postsecondary education expenses to be established or modified "in the same manner" as child support, refers only to the statutory procedure, and not the substance, of such legislation. In our view, it is significant that subsection (1.5)(d) was adopted the year immediately following the 1991 statutory amendments.

#### B.

Construction of a statute is a matter of law. *In re Marriage of Van Inwegen,* 757 P.2d 1118 (Colo.App.1988). If possible, a statute should be interpreted to give consistent, harmonious effect to all its parts. *In re Marriage of Davisson,* 797 P.2d 809 (Colo.App.1990). When statutes on the same subject are potentially conflicting, the court must reconcile them, if possible, to avoid an inconsistent or absurd result. *In re Marriage of Dureno,* 854 P.2d 1352 (Colo.App.1992).

In 1991, the General Assembly enacted the first major statutory changes concerning emancipation and postsecondary education expenses. *See* Stephen J. Harhai, *Child Support Changes In 1991 Emancipation at 19 and Voluntary Unemployment,* 40 Trial Talk 205 (Aug.1991). Under the 1991 legislation, unless otherwise agreed in a written stipulation after July 1, 1991, emancipation occurred and child support terminated at the age of nineteen years. Postsecondary education expenses could be ordered, but not beyond the child's twenty-first birthday or for higher education beyond the undergraduate degree. Colo. Sess. Laws 1991, ch. 38, § 14–10–115(1.5) at 234–36.

Section 14–10–115(1.5)(c) was originally added in 1991 and was not modified again until 1997. During that period, it provided that subsection (1.5) shall apply to all child support obligations established or modified in any of the enumerated proceedings "whether filed on, prior to, or subsequent to July 1, 1991." It also provided that "subsection (1.5) does not apply to modifications of child support obligations with respect to a child whose nineteenth birthday falls before July 1, 1991."

A series of complex statutory changes to the postsecondary education expense provisions was made between 1991 and 1997. *See* Helen C. Shreves & Richard A. Harris, *Postsecondary Education Costs: Forging Through a Legislative Labyrinth*, 24 Colo. Law. 43 (Jan.1995)(Shreves I); *see also* Helen C. Shreves, *Post-secondary Education Expenses: A Multi-tiered Approach*, 27 Colo. Law. 61 (Jan.1998)(Shreves II).

In 1997, § 14–10–115(1.5)(c) was amended to provide that subsection (1.5) shall apply to all child support obligations established or modified as part of any proceeding prior to July 1, 1997. Additionally, language was added to § 14–10–115(1.5)(c) that "subsection (1.5) shall not apply to child support orders established on or after July 1, 1997, which shall be governed by subsection (1.6) of this section." Colo. Sess. Laws 1997, ch. 147 at 567. Under § 14–10–115(1.6), C.R.S.2003, the court is precluded from ordering postsecondary education costs as part of child support orders entered on or after July 1, 1997, unless otherwise agreed to by the parties in a written stipulation after July 1, 1997.

We conclude, therefore, that § 14–10–115(1.5)(c) was modified to distinguish between orders for postsecondary education costs entered prior to, and after, July 1, 1997, when, in a distinct departure from prior law, the court could no longer enter orders for postsecondary education expenses absent written agreement of the parties. *See* § 14–10–115(1.6). We further conclude that § 14–10–115(1.5)(c.5) was added in 1997 to clarify that the convoluted legislation that had been passed since 1991 was applicable to all orders established or modified prior to July 1, 1997.

In 1993, the General Assembly first limited the postsecondary education obligation to no more than what the obligor was required to pay under the most recent child support order. At that time, an expansive definition of postsecondary expenses was adopted. *See* Colo. Sess. Laws 1993, ch. 270, § 14–10–115(1.5)(b), (e) at 1556–57.

However, the 1994 statutory amendments, which initially were applicable only to actions commenced on or after July 1, 1994, revised the limitation on the obligation for postsecondary education expenses to the presumed guideline support amount and severely restricted postsecondary education costs to include only tuition, books, and fees. *See* Colo. Sess. Laws 1994, ch. 266, § 14–10–115(1.5)(b), (e) at 1536–37.

In our view, by explicitly providing that the 1994 amendments could be applied to modify any order entered between July 1, 1991, and July 1, 1997, the General Assembly eliminated any doubt that was created by the serial changes made to § 14–10–115(1.5)(b). *See generally* Shreves I, *supra.*

Thus, we agree with the reasoning of *In re Marriage of Crowder, supra.* As stated there, *In re Marriage of Channell*, 797 P.2d 819 (Colo.App.1990), did not preclude the relief sought based on a later statutory change. Indeed, § 14–10–115(1.5)(c.5) also provides only that orders entered prior to July 1, 1997, which do not provide for postsecondary education expenses, shall not be modified pursuant to subsection (1.5). The converse inference supports our conclusion that orders containing such provisions entered prior to July 1, 1997, may be modified under the applicable statutory changes.

Here, the magistrate concluded that father's obligation for the child's postsecondary education expenses was reaffirmed in 1994 and was nonmodifiable. This was error, as stated in *In re Marriage of Crowder, supra,* and reiterated above. The 1994 stipulation was made an order of court, and the parties specifically agreed that the applicable child support guidelines and Colorado law were to be the standard for determining all child support obligations. Postsecondary education expenses are a form of child support obligations under the statute, and the parties themselves listed college tuition and expenses as a subcategory of child support in

their 1984 separation agreement. Therefore, the magistrate erred in failing to grant father's request for declaratory relief to modify his postsecondary education obligation to conform to the statutory limits.

We note that the child support guidelines also allow the court on remand to consider additional factors that actually diminish the basic needs of the child as deductions from the basic child support obligation. Section 14–10–115(13)(b), C.R.S.2003; *see In re Marriage of Pollock,* 881 P.2d 470 (Colo.App.1994)(extent to which a child's income should be applied to the payment of educational expenses or basic support is a question of fact to be determined by the trial court under the totality of circumstances in each case).

### C.

█ Nevertheless, relying on *In re Marriage of Eaton,* 894 P.2d 56 (Colo.App.1995), mother argues that father was required to show a substantial and continuing change of circumstances to modify his postsecondary education obligation. We are not persuaded.

In *Eaton,* the division did not consider the provisions of § 14–10–122(4), C.R.S.2003, which were added in 1991, that "[n]otwithstanding the provisions of subsection (1) of this section, the provisions of any decree respecting child support may be modified as a result of the change in age for the duty of support as provided in section 14–10–115(1.5)." *See* Colo. Sess. Laws 1991, ch. 38 at 238. Thus, we conclude that § 14–10–122(4) was intended to allow modification of both child support and postsecondary education support solely on the basis of the statutory changes.

Moreover, *Eaton* was decided before the 1997 modification to § 14–10–115(1.5)(c) that statutory changes to subsection (1.5) apply to any orders entered prior to July 1, 1997, which is the case here. *See also In re Marriage of Crowder,* supra (holding that the trial court erred by failing to limit father's college cost obligation to the presumed monthly child support guideline amount as required by § 14–10–115(1.5)(b)(I)).

The 1997 addition of § 14–10–115(1.5)(c.5) buttresses this conclusion. Subsection (1.5)(c.5) explicitly provides that orders en-

tered between July 1, 1991, and July 1, 1997, may be modified to provide for postsecondary education expenses, subject to the statute as it existed on July 1, 1994.

Accordingly, it is necessary to remand this matter to the district court to modify father's obligation in accordance with the statutory provisions discussed above.

### II.

Father asserts that the magistrate erred in calculating his 2001 income by projecting for a full year the income he earned over the most recent seven-month period in 2001, rather than by averaging it with prior years over some reasonable period of time. The magistrate calculated father's child support obligation for each year based on the income earned in that year. We need not address the merits of father's assertion.

Because of our resolution of the issues relating to postsecondary education expenses, on remand, the district court will, in any event, need to apply the child support guidelines to father's 2001 income to determine the limits of his obligation for postsecondary education expenses. Accordingly, the district court is directed to redetermine father's 2001 income based on the evidence now available for the full year and to recalculate his entire support obligation for the year based on that determination.

### III.

█ Father also contends that the magistrate erred in retroactively calculating support prior to mother's filing of the motion to modify support. We reject this characterization of the magistrate's order.

The magistrate's determination of the amount owed under the parties' 1994 agreement constituted enforcement of the child support obligation specified there, which was intended to be calculated after the fact. Therefore, the calculation did not constitute retroactive modification of the decree, which is generally prohibited. *See In re Marriage of Meisner,* 807 P.2d 1205 (Colo.App.1990).

## IV.

 Father next contends that the magistrate abused its discretion in awarding mother $14,000 in attorney fees because father does not earn as great a percentage of the combined total income of the parties as the trial court found and the record showed that mother's net worth exceeded his. We disagree.

 In awarding fees and costs under § 14–10–119, C.R.S.2003, the district court must consider the relative financial status of each party by making findings concerning their relative incomes, assets, and liabilities. *In re Marriage of Aldrich*, 945 P.2d 1370 (Colo.1997).

Here, the court's order shows that it considered the parties' relative financial status. Given the wide disparity in the parties' incomes, we cannot say as a matter of law that the court's failure to calculate precisely the net assets renders the order an abuse of discretion.

## V.

In light of our disposition of the case, we need not address father's assertions that the court erred as a matter of law in failing to consider his financial obligations to his other children and that the magistrate made additional pervasive errors that require reversal.

## VI.

We decline to address mother's request for attorney fees and costs on appeal, made for the first time after briefing on appeal was completed. Such issues can be addressed by the district court on remand.

The orders are reversed to the extent that they provide that father's obligation for post-secondary education expenses (1) extends beyond the earlier of the child's twenty-first birthday or an undergraduate degree, (2) exceeds the presumptive guideline amount, and (3) applies to postsecondary expenses beyond those defined in the statute. The case is remanded to the district court for further proceedings and entry of a revised order consistent with this opinion. In all other respects, the orders are affirmed.

Judge CASEBOLT and Judge GRAHAM concur.