24CA2002 Parental Resp Conc DB 07-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2002
El Paso County District Court No. 19DR30839
Honorable Catherine Mitchell Helton, Judge

In re the Parental Responsibilities Concerning D.B., a Child,

and Concerning Bryan Heim,

Appellant,

and

Callie Jessica Bible,

Appellee,

and

Ondis Bible and Irene Bible,

Intervenors.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BROWN
Dunn and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

Kumpf Charsley & Hansen, LLC, Robert E. Wells, Englewood, Colorado, for
Appellant

No Appearance for Appellee

No Appearance for Intervenors

¶ 1     Bryan Heim (father) appeals the district court's order that granted a motion concerning grandparent visitation disputes filed by maternal grandparents, Ondis Bible and Irene Bible (collectively, grandparents). We affirm the order in part, reverse it in part, and remand the case to the district court for further proceedings.

## I.     Relevant Facts

¶ 2     Callie Jessica Bible (mother) and father are the parents of D.B. (child). In 2020, the court allocated parenting time primarily to mother, who had moved to Tennessee. Father remained in Colorado.

¶ 3     About a year later, father filed a motion to increase his parenting time. Shortly after that, a dependency and neglect case was initiated in Tennessee due to mother's substance abuse. As part of that proceeding, grandparents, who also lived in Tennessee, were granted temporary custody of the child. The Tennessee court later transferred the matter to Colorado, and father received temporary custody of the child. Grandparents then intervened in this case.

¶ 4     In a December 2021 ruling, the district court allocated parenting time primarily to father, restricted mother's parenting time, and ordered family time for grandparents (APR order).

¶ 5     As to mother, the court ordered that she could exercise parenting time supervised by grandparents for one week per month until the child began school in August 2022.  To be entitled to her parenting time, however, mother was required to submit to random urinalysis testing and provide father with proof of her negative results no less than twice per month.

¶ 6     Concerning grandparents, the court ordered that they could exercise family time with the child "every other spring break, the latter half of the holiday vacation, a portion of fall break, and two weeks each summer."  And if mother did not comply with the conditions for her parenting time, grandparents could also exercise mother's one-week-per-month visits until the child started school.

¶ 7     With respect to transportation costs, the court ordered that "[t]he receiving party shall pay for the child's transportation costs."

¶ 8     About six months later, grandparents filed a motion alleging that father had violated the APR order and interfered with their family time in March 2022, April 2022, July 2022, August 2022,

winter break 2022 and spring break 2023. They alleged that father was (1) requiring them to exercise their family time in Colorado; (2) imposing conditions on their visits that the court had not ordered; and (3) refusing to pay for his share of the child's travel costs. They also alleged that father's conduct was interfering with their upcoming summer 2023 visit with the child.

¶ 9 Due to grandparents' allegations concerning the upcoming summer visit, the court held an expedited status conference to address the issue on an interim basis. The court directed father to allow the child to visit grandparents in Tennessee and confirmed that the travel costs were allocated pursuant to the APR order.

¶ 10 Before the court resolved grandparents' motion, grandparents supplemented it with allegations that father had committed additional violations by refusing to pay a portion of the child's travel costs during their winter 2023 and summer 2024 visits in Tennessee and by again placing conditions on these visits that the court had not ordered.

¶ 11 After a hearing, the court granted grandparents' motion in part. The court first found no violations associated with grandparents' allegations concerning their ability to exercise

3

mother's parenting time from March 2022 through August 2022. But the court found that father denied grandparents eight days of family time in winter 2022 by demanding that the visit occur in Colorado and by imposing conditions to limit mother's contact with the child during grandparents' visits. The court also found that father violated the APR order in spring 2023 by requiring grandparents to exercise that visit in Colorado and by imposing additional conditions on their time with the child. The court found that, until it intervened at the status conference, father had been refusing to allow the child to go to Tennessee for the summer 2023 visit and was again requiring that grandparents agree to additional conditions in violation of the APR order. And the court found that father violated the APR order in winter 2023 and summer 2024 by refusing to pay his portion of the child's transportation costs associated with these visits.

¶ 12    For its remedial orders, the court awarded grandparents eight days of makeup family time for the missed visit in winter 2022 and ordered father to reimburse grandparents for the additional travel costs they incurred related to the visits in spring 2023, winter 2023,

and summer 2024.  It also awarded grandparents 25% of their attorney fees — $3,382.

## II.  Grandparents' Family Time Disputes

¶ 13  Father contends that the district court's order must be reversed.  We agree with father that the court erred by determining that he violated the APR order concerning grandparents' visits in winter 2022, spring 2023, and summer 2023.  We therefore reverse those parts of the court's order and the remedial orders associated with those violations.  However, we reject father's contention related to the winter 2023 and summer 2024 visits.  Given the partial reversal, we must also reverse the court's award of attorney fees and remand that issue to the district court for reconsideration.

### A.  Governing Legal Standards

¶ 14  If the court finds that a parent did not comply with an order regarding grandparent family time, the court may impose remedial orders in the best interests of the child.  *See* § 14-10-124.5(2), C.R.S. 2024; *In re Adoption of C.A.*, 137 P.3d 318, 324 (Colo. 2006); *see also* § 19-1-117.5, C.R.S. 2022 (repealed and relocated to section 14-10-124.5, effective Aug. 7, 2023).

5

¶ 15    As with all orders concerning parenting time, the court has broad discretion to resolve a motion concerning grandparent family time disputes.  *See* § 14-10-124.5(2); *cf. In re Marriage of Dean*, 2017 COA 51, ¶ 19.  We will not disturb the court's decision absent a showing that the court misapplied the law or that it acted in a manifestly arbitrary, unreasonable, or unfair manner.  *See In re Marriage of Collins*, 2023 COA 116M, ¶ 8.  We review de novo the court's legal conclusions and its interpretation of a court order.  *See In re Marriage of de Koning*, 2016 CO 2, ¶ 17; *Andrews v. Miller*, 2019 COA 185, ¶ 8.

B.    Family Time in Winter 2022, Spring 2023, and Summer 2023

¶ 16    The district court determined that father violated the APR order concerning grandparents' family time in winter 2022, spring 2023, and summer 2023 for two reasons: (1) father required grandparents to exercise their family time in Colorado; and (2) father imposed conditions on grandparents' family time that had not been ordered by the court.  We agree with father that the court erred by making these determinations.

### 1. Father's Decision on Family Time in Colorado

¶ 17 Father argues that the APR order did not prevent him from deciding that the winter 2022, spring 2023, and summer 2023 visits should occur in Colorado. We agree.

¶ 18 To violate an order regarding grandparent visitation, a party must have failed to comply with exactly what the order required. *Cf. In re Marriage of Davis*, 252 P.3d 530, 537 (Colo. App. 2011) ("In order to be held in contempt . . . , a party must have refused to do exactly what the court order required."). When interpreting a court's prior order to determine whether a party complied, we apply principles of contract interpretation and must give effect to the court's intent as determined by the plain language of the order. *See Blecker v. Kofoed*, 672 P.2d 526, 528 (Colo. 1983); *In re Marriage of Crowder*, 77 P.3d 858, 860-61 (Colo. App. 2003).

¶ 19 Nothing in the written APR order addressed the location of grandparents' family time or limited father's right to decide the location of visits. *See Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (recognizing a parent's fundamental interest in the care, custody, and control of a child). The court merely set forth the schedule of

grandparents' family time, which was a schedule that father agreed they could exercise.

¶ 20    To be sure, the court expanded on its written order during its oral ruling. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 9 n.1 (recognizing that a court's oral findings may supplement the written order when they do not conflict). But the court's oral statements still did not make clear that father could not decide that the winter 2022, spring 2023, and summer 2023 visits would occur in Colorado.

¶ 21    During the oral ruling, the court noted that, in addition to the family time it allocated to grandparents, grandparents had asked for an additional week per month with the child until school began in August 2022. Father did not object to these one-week-per-month visits but wanted the visits to occur in Colorado. The court ultimately declined to award grandparents these additional visits but ordered that if mother did not meet the conditions necessary to exercise her supervised parenting time, grandparents could exercise mother's one-week-per-month visits until the child started school.

¶ 22    Father asked the court to clarify the location of the "one week per month" visits. The court confirmed that it had denied father's

request that they occur in Colorado but clarified that it was "not overriding [father's] decision, as far as grandparent time; that is time [it] allocated to [mother]." Then, near the end of the oral ruling, grandparents asked whether the "one week per month" visits would occur in Tennessee. The court responded, "Can either be in Tennessee or Colorado."

¶ 23 Reviewed as a whole, the court's comments concerning the location of visits and the denial of father's request that they occur in Colorado related to grandparents' ability to exercise mother's parenting time if she could not, until the child began school in August 2022. The court did not address where grandparents' visits would occur after August 2022. Nor did it determine that father could not decide whether the visits should occur in Colorado.

¶ 24 This reading of the APR order is supported by the absence of any findings by the court determining that grandparents had overcome the presumption that father's decisions on grandparents' family time were in the child's best interests. When there is a dispute between a parent and grandparents, a fit parent's decisions on visits must be given special weight, and the court must presume that the parent is acting in the child's best interests. *Troxel*, 530

U.S. at 68-70; *C.A.*, 137 P.3d at 324-25, 327-28. To overcome that presumption and interfere with father's fundamental right to the care, custody, and control of the child, the court needed to find that grandparents had shown by clear and convincing evidence that father's decisions concerning family time — and the location of the visits in particular — not in the child's best interests. *See C.A.*, 137 P.3d at 327-28. The court made no such findings.

¶ 25    Father was entitled to the presumption that he was acting in the child's best interest when he decided that the child should not travel to Tennessee due to mother's noncompliance with the conditions of her parenting time related to her sobriety. The court did not afford father that presumption. Consequently, we conclude that the court erred when it determined that father violated the APR order by requiring grandparents' visits to occur in Colorado during winter 2022, spring 2023, and summer 2023.

2.    Additional Conditions Imposed by Father

¶ 26    Father also argues that the district court erred by finding that he violated the APR order by imposing additional conditions not ordered by the court related to grandparents' winter 2022, spring 2023, and summer 2023 visits. Again, we agree.

10

¶ 27    The court determined that father had improperly imposed additional conditions on grandparents' exercise of family time in winter 2022 by requiring them to (1) sign a contract, in which they would agree that mother could not be near or have "face to face interaction" with the child; (2) agree that the child would not have video contact with mother; and (3) agree to let father know when there would be phone calls between the child and mother.  The court also found that father imposed additional conditions on grandparents' family time in spring 2023 and summer 2023, but it did not specify what conditions father imposed related to those visits beyond the conditions imposed on the winter 2022 visit.

¶ 28    Beginning with father's proposed contract, the record does not support the court's finding that father attempted to force grandparents to sign that contract in connection with family time in winter 2022, spring 2023, or summer 2023.  Grandmother testified that father sent grandparents a contract to limit the child's contact with mother while grandparents exercised her parenting time and that father asked them to sign the contract before the child could visit grandparents in July 2022.  In support of her testimony, grandmother presented the court with a message from father, which

11

showed that he sent them the contract in May 2022 related to an upcoming visit later that month. In that communication, father explained that mother was not entitled to any parenting time because she had not provided proof of her sobriety as required by the APR order, and he asked for grandparents' assurances that the child would not have unauthorized contact with mother.

¶ 29　　Although this evidence shows that father presented grandparents with a contract in May 2022, grandmother testified that grandparents did not sign it and yet still exercised mother's parenting time later that month. And the court determined that father had not violated the APR order in May 2022 — the month father sent grandparents the proposed contract — *or* July 2022 — the month grandmother said their visit had been conditioned on grandparents signing the contract. Grandparents did not direct the court to any evidence showing that father asked them to sign the contract again. Nor does the record reveal that he conditioned grandparents' family time in winter 2022, spring 2023, or summer 2023 on the proposed contract. Thus, we conclude that the record does not support the court's finding that father violated the APR order by demanding that grandparents sign a contract before

exercising their family time in winter 2022, spring 2023, or summer 2023. *Cf. Rumford v. Pub. Emps.' Ret. Ass'n*, 883 P.2d 614, 616 (Colo. App. 1994) ("An abuse of discretion occurs when there is no competent evidence in the record to support the decision.").

¶ 30   Moving to the court's findings on father's additional conditions limiting the child's contact with mother, we conclude that the court erred by determining that father violated the APR order by imposing the conditions. In the APR order, the court found that parenting time with mother endangered the child. The court allowed her to exercise only supervised parenting time and only if she provided father with proof of her sobriety no less than twice per month.

¶ 31   In father's communications with grandparents, he informed them that, at the time of the winter 2022, spring 2023, and summer 2023 visits, mother had not provided him with proof of her sobriety. As a result, mother was not allowed to visit the child under the APR order. Father then sought assurances from grandparents that mother would not visit or interact with the child unless and until mother met the court-ordered conditions for her to exercise supervised parenting time.

¶ 32    The court made no express findings that mother had met the necessary conditions to exercise her family time.  Thus, father's requests that grandparents not allow contact with mother were not conditions beyond what was required by the APR order.  Rather, father's requests were consistent with the court-ordered restriction on mother's parenting time until he received twice-monthly clean urinalysis tests.

¶ 33    In the end, we conclude that the court erred by determining that father violated the APR order related to grandparents' family time in winter 2022, spring 2023, and summer 2023.  We reverse those portions of the order and the associated remedial orders, which include the award of eight days of makeup family time, $1,900 in travel costs for the spring 2023 visit, and attorney fees related to these purported violations.

C.    Family Time in Winter 2023 and Summer 2024

¶ 34    Father contends that the court erred by determining that he violated the APR order when he refused to pay transportation costs to return the child from grandparents' family time in winter 2023 and summer 2024.  We disagree.

14

¶ 35    Under the APR order, the "receiving party" was obligated to pay the child's transportation costs.  The court found that father was the receiving party when the child was returning to Colorado following the winter 2023 and summer 2024 visits with grandparents in Tennessee.  And it found that father refused to pay for the child's return flights.

¶ 36    Father acknowledges that the court's written APR order required the "receiving party" to pay the child's transportation costs and that he did not pay for the child's transportation back to Colorado in winter 2023 and summer 2024.  But he argues that the court misinterpreted the APR order because its oral ruling limited this obligation to the "[r]eceiving *parent*" when the child was returning from "*parenting* time."  (Emphasis added.)  He thus argues that the court erred by extending his obligation to pay transportation costs to grandparents' family time.

¶ 37    But the written APR order plainly obligates the "receiving *party*" to pay the child's transportation costs.  (Emphasis added.)  *See Blecker*, 672 P.2d at 528; *Crowder*, 77 P.3d at 860-61.  The order did not limit this obligation to parents or to the exercise of mother's parenting time.  Because grandparents were parties to the

15

case, they were included in this part of the APR order. *See A.M. v. A.C.*, 2013 CO 16, ¶ 16 (recognizing that an intervening party becomes a party to the litigation). Father likewise was a party to the case and was obligated to pay for the child's transportation costs when he was receiving the child following a visit with grandparents. To the extent the written order conflicts with the court's oral statements, the written order prevails. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 41.

¶ 38 Father also contends that neither section 14-10-124.4, C.R.S. 2024, nor section 19-1-117, C.R.S. 2022 (repealed and relocated to section 14-10-124.4, effective Aug. 7, 2023) authorized the court to enter an order that required him to pay transportation costs related to grandparents' family time. But father did not appeal the APR order. *See* C.A.R. 4(a)(1) (A party must appeal "within 49 days after entry of the judgment, decree, or order being appealed."). It is therefore a final and binding order. *See In re Marriage of Barber*, 811 P.2d 451, 454 (Colo. App. 1991) (recognizing that orders not timely appealed are final and not subject to review). It is too late for father to challenge his obligation to pay transportation costs as set forth in the APR order. *See In re Marriage of James*, 2023 COA 51,

¶ 8 ("The timely filing of a notice of appeal is a jurisdictional prerequisite for appellate review.").

¶ 39　In any event, a court may, in its discretion, enter orders in the child's best interests to facilitate grandparents' family time. *See* § 14-10-124.4(4), (7) (directing the court to focus on the child's best interests when determining a grandparent's request for family time); § 19-1-117(2), (4) (same). An order allocating transportation costs associated with grandparent visitation falls within that discretion.

¶ 40　Thus, we conclude that the court did not err by determining that father violated his obligation to pay the child's transportation costs when returning to Colorado following grandparents' family time in winter 2023 and summer 2024.

## D. Award of Attorney Fees

¶ 41　The district court awarded grandparents 25% of their reasonable attorney fees, but it did not explain how the amount of fees it awarded related to father's multiple violations other than noting that grandparents incurred additional fees when the court intervened for their summer 2023 visit. Given that we have reversed the court's order in part, we must reverse the award of attorney fees and direct the court to reconsider this issue. *See*

17

*Nagy v. Landau*, 807 P.2d 1227, 1229 (Colo. App. 1990) (an award of attorney fees is necessarily reversed where the judgment upon which it relied was reversed). On remand, the court shall determine the reasonable amount of attorney fees, if any, to award grandparents based on father's violations related to grandparents' winter 2023 and summer 2024 family time. *See* § 14-10-124.5(2)(f).

III.  Disposition

¶ 42  We reverse the portions of the district court's order concerning grandparents' winter 2022, spring 2023, and summer 2023 family time and the associated remedial orders. We also reverse the court's award of attorney fees and remand the case for the court to reconsider that issue consistent with this opinion. The order is otherwise affirmed.

JUDGE DUNN and JUDGE SCHOCK concur.