25CA0228 Marriage of Neifert 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0228
Douglas County District Court No. 22DR30844
Honorable Daniel Warhola, Judge

In re the Marriage of

Rebecca A. Aardal,

Appellee,

Mark B. Neifert,

Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE FREYRE
Johnson and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Sherr Puttmann Akins Lamb PC, Tanya L. Akins, Denver, Colorado, for
Appellee

Radeff & Hart, PC, Andrew Hart, Lakewood, Colorado, for Appellant

¶ 1	In this post-decree dissolution of marriage case between Mark B. Neifert (husband) and Rebecca A. Aardal (wife), husband appeals the district court's order that interpreted the previously entered permanent orders and clarified the division of a profit-sharing account. We affirm.

## I.	Background

¶ 2	In February 2024, the district court (February Court) dissolved the twenty-five-year marriage. It adopted a transcript of its oral ruling as its written permanent orders. The February Court divided the approximately $2,200,000 marital estate and allocated to husband a disproportionate share of the marital equity in lieu of awarding him maintenance. The court ordered that the "difference" for husband's "disproportionate amount" was "$360,000," and so, "he gets $360,000 more than 50/50." The court directed the parties to use a Charles Schwab profit-sharing account to pay husband this disproportionate share.

¶ 3	The parties later requested a status conference to clarify the February Court's ruling. The parties explained that, to equalize the marital property division, husband would receive $246,155 from the profit-sharing account. However, they could not agree on how

much more the February Court allocated to him for his disproportionate share of the marital estate, and, as a result, the amount of the profit-sharing account he was entitled to receive.

¶ 4     Husband argued that he was entitled to an additional $360,000 from the profit-sharing account.  In his view, the February Court allocated half of the marital estate (about $1,100,000) to each party and then allocated him an additional $360,000 from wife's share.  That is, the court allocated him approximately $1,460,000 of the total marital estate and allocated wife the remaining $740,000.  Thus, he argued that he must receive $606,155 from the profit-sharing account — $246,155 plus an additional $360,000.

¶ 5     Wife argued that husband was entitled to a total of only $426,155 from the profit-sharing account.  She explained that the February Court allocated him a difference of $360,000, which meant that he was entitled to an additional $180,000 from the profit-sharing account (after the $246,155 equalization payment).  She continued explaining that, by receiving an additional $180,000, husband received about $1,280,000 from the marital estate and wife received the remaining $920,000.  She argued that this

allocation effectuated the February Court's order for husband to receive $360,000 more.

¶ 6 At the December 2024 status conference, a different district court judge presided over the case (December Court) and sided with wife. The December Court determined that "looking at the [February] Court's order on its face and dividing the property accordingly results in [wife] giving [husband] $180,000 on top of the equalization payment." The December Court explained that the permanent orders directed husband to "walk away with $360,000 more" and that by giving husband an additional $180,000 from the profit-sharing account, wife's portion of the marital estate decreased by $180,000, which resulted in a difference of $360,000. The December Court then ordered husband to receive $426,155 from the profit-sharing account.

## II. Discussion

¶ 7 Husband contends that the December Court erred by interpreting the February Court's permanent orders and concluding that he would receive only $426,155 from the profit-sharing account. He argues that the December Court's interpretation was inconsistent with the plain language of the permanent orders,

conflicted with the February Court's findings and conclusions, and caused an inequitable disposition of the marital estate. We disagree.

A.     Governing Legal Standards

¶ 8     We review de novo a district court's interpretation of a court's order. *See Andrews v. Miller*, 2019 COA 185, ¶ 8; *Blecker v. Kofoed*, 672 P.2d 526, 527-28 (Colo. 1983).

¶ 9     When doing so, our goal is to determine and give effect to the court's intent. *See Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000); *see also Blecker*, 672 P.2d at 528 (noting that an appellate court interprets an order to effectuate the district court's intent by applying the same rules of construction as when an appellate court interprets a statute or contract). To determine that intent, we look to the plain language of the order. *See Ad Two*, 9 P.3d at 376; *In re Marriage of Crowder*, 77 P.3d 858, 861 (Colo. App. 2003). In doing so, we must construe the order in its entirety and in harmony with the generally accepted meanings of the words used. *See Ad Two*, 9 P.3d at 376; *Crowder*, 77 P.3d at 861.

## B.  Analysis

¶ 10     At the permanent orders hearing, wife asked the court to deny husband maintenance because she could not afford to pay it and independently meet her reasonable needs.  Instead, she proposed that the court allocate him about fifty-five percent of the marital equity (which she said was $1,208,390) and allocate her the remaining equity (which she said was $995,609).  Wife asserted that her proposal resulted in a difference of $212,781 in the marital equity allocated to each of them.

¶ 11     The February Court acknowledged that an equal allocation of the marital estate allowed each party to receive about $1,100,000 and that, before it considered maintenance, such an equal allocation was equitable.  The February Court then considered husband's maintenance request.  It found that he had demonstrated a need for maintenance and that he was seeking around $3,000 per month.  But it found that a $3,000 per month maintenance obligation "would financially break" wife and that she would be unable to meet her reasonable needs while paying maintenance.  The February Court then determined that, in lieu of

5

maintenance, it would allocate husband a disproportionate share of the marital property.

¶ 12 The February Court acknowledged that wife proposed a disproportionate allocation that would have given husband an "extra $212,781," but the court determined that its allocation needed to be "more than she propose[d]." It explained that "if [it] had ordered spousal support, [maintenance] would've been $3,000 per month" for ten years, which would amount to "$360,000." The court found that wife's proposed allocation was "short by [$]147,219." The court ordered "that in addition" to wife's proposal for an "extra $212,781," it "add[s] to that . . . $147,219. . . . So[,] [its] order for the disproportionate amount is that [husband] has to get $360,000." It then concluded, "the Court's order is [that] the difference needs to go up to [$]360,000[;] . . . my order is that he gets $360,000 more than 50/50." And it said that "to accomplish that you take the difference out of the Charles Schwab profit sharing account."

¶ 13 Husband argues by ordering him to get "$360,000 more than 50/50," the February Court allocated him approximately $1,460,000 of the marital estate, which was $360,000 more than

half the value of the marital estate. He thus argues that he was entitled to an additional $360,000 from the profit-sharing account. However, when we review the totality of the February Court's ruling, his interpretation falls short.

¶ 14 When making its ruling, the February Court focused on the *difference* between the amount of marital equity allocated to each party. In particular, the February Court relied on wife's proposal as a starting point, noting that she proposed giving husband $212,781 more marital equity than wife. The court then added $147,219 to that amount to get to a "difference" of $360,000. If, as husband contends, the February Court intended to give him an additional $360,000 from the profit-sharing account, the court needed to add $507,219 to wife's proposal. It did not. Thus, a plain reading of the permanent orders reveals that the February Court's disproportionate allocation directed that husband receive approximately $1,280,000 of the marital estate and that wife receive approximately $920,000. *See Ad Two*, 9 P.3d at 376; *Crowder*, 77 P.3d at 861. The December Court therefore correctly determined that, after husband received $246,155 to equalize the property

division, the permanent orders entitled him to an additional $180,000 from the profit-sharing account.

¶ 15    Still, husband argues that this interpretation was inconsistent with the February Court's findings and conclusions which indicated that he receive a $360,000 lump sum payment for maintenance. To be sure, the February Court acknowledged that maintenance of $3,000 per month was appropriate, which would have allowed husband to receive $360,000 during the ten-year maintenance term. But the February Court declined to award such a maintenance obligation because it "would financially break" wife. The February Court then ordered a disproportionate allocation that resulted in a $360,000 "difference"; it did not order a lump sum maintenance payment.

¶ 16    But even if we were to assume that this purported inconsistency created an ambiguity, we still think the record supports the December Court's interpretation of the order. Indeed, as explained above, the record reveals that the February Court's reliance on wife's proposal to determine a disproportionate allocation demonstrates that the court intended to give husband an overall difference of $360,000, not a lump sum payment. And the

8

final allocation under the December Court's interpretation is substantially similar to wife's proposal as modified by the February Court in its hearing.

¶ 17    Lastly, husband contends that the December Court's interpretation led to an inequitable disposition of the marital estate. But the December Court did not allocate the marital estate. It interpreted the February Court's property division. And its interpretation is in accordance with the plain language of the February Court's permanent orders. Although husband disagrees with the allocation, it is too late for him to now appeal the February Court's determination on the equitable property division. *See* C.A.R. 4(a)(1) (providing that a notice of appeal must be filed forty-nine days after the entry of the judgment being appealed); *In re Marriage of James*, 2023 COA 51, ¶ 8 ("The timely filing of a notice of appeal is a jurisdictional prerequisite for appellate review."); *see also Karr v. Williams*, 50 P.3d 910, 912 (Colo. 2002) (recognizing that a judgment not appealed becomes final and binding on the parties).

¶ 18    The December Court therefore did not err by interpreting the February Court's ruling and ordering husband to receive $426,155 from the profit-sharing account.

## III.   Disposition

¶ 19    The order is affirmed.

JUDGE JOHNSON and JUDGE KUHN concur.